**In re FREDERICK SAVAGE, INC., Debtor.**

**Bankruptcy No. 91–33248–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

March 15, 1995.

Francis D. Sheehy, Gutter, Josepher, Ruffin & Sheehy, P.A., Ft. Lauderdale, FL, Sp. Tax counsel for debtor.

Kevin C. Gleason, Houston & Shahady, P.A., Ft. Lauderdale, FL, for debtor.

Alvarez L. Le Cesne, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC.

Amber Donner, Attorney–Advisor, Office of U.S. Trustee, U.S. Dept. of Justice, Miami, FL.

### *MEMORANDUM OPINION*

ROBERT A. MARK, Bankruptcy Judge.

The Debtor, Frederick Savage, Inc. ("Debtor") objects to a portion of the Internal Revenue Service's ("IRS") amended proof of claim in this Chapter 11 case, specifically the penalties and interest asserted for Debtor's failure to timely file tax returns, failure to timely pay taxes and failure to deposit taxes. The Debtor argues that its

failure to take these actions was due to "reasonable cause" excusing the corporation from payment of the statutory penalties.

The Debtor filed a voluntary petition commencing this Chapter 11 case on November 6, 1991. It filed a plan which was confirmed on July 29, 1993. The IRS filed an Amended Claim described in greater detail below. The Debtor objected in part to the IRS claim by an Objection to Claim filed on December 14, 1993.

The Court conducted an evidentiary hearing on the Objection on February 17, 1994. After consideration of the evidence presented at the hearing and the arguments of counsel and upon review of applicable case law, the Court overrules the objection to claim. The Debtor has not established "reasonable cause" to avoid imposition of the tax penalties.

### FACTUAL BACKGROUND

The parties filed a Stipulation of Facts on March 21, 1994. The findings in this Opinion include the stipulated facts and additional findings based upon the exhibits and testimony offered at the February 17, 1994 hearing.

The Debtor is a Florida corporation which owns and operates a hair salon. The Debtor was incorporated in 1989 and was initially owned by Edward Savage ("Savage") and Frederick Worroll ("Worroll"). Savage received 51% and Worroll 49% of the corporate stock. Worroll was the Debtor's president and Savage the vice-president until Savage left the corporation in August, 1991. On August 26, 1991, Savage and Worroll executed a Contract for Sale of Stock which transferred all ownership interest in the Debtor to Worroll, described in more detail below.

Worroll has a GED high school diploma and is a licensed cosmetologist. Other than part-time jobs, he has never worked except as a hair stylist. He has no accounting, business or tax background. Savage was on the board of directors of Gateway American Bank, and was the chief financial officer of a publicly traded corporation. Savage has substantial background in accounting, corporate finance and corporate tax matters.

In the Debtor's day-to-day operations, Worroll styled hair, just as he had done as an employee with his former employers, and attracted clientele and other hairdressers to the shop. As the minority shareholder, Worroll did not make independent decisions on behalf of the Debtor and did not participate in the day-to-day business or financial operations of the Debtor.

Savage controlled the corporation and was designated by the owners, Savage and Worroll, to be the person responsible for all of the record-keeping of the Debtor, for financial operations, for filing of tax returns, for making the Form 941 (FICA) tax deposits, and for paying the Form 941 (FICA) and Form 940 (FUTA) taxes. Savage also was responsible for establishing and implementing any procedures necessary for the Debtor to comply with its tax obligations. Other than those procedures established and carried out by Savage, the Debtor had no procedures for ensuring that tax returns were timely filed, that tax deposits were timely made, and that taxes were paid when due.

Savage, or his daughter Ruth, prepared and signed all of the checks for the business. Savage made all of the business decisions for the Debtor from incorporation until August 1991, including whether or when tax returns would be filed, when tax deposits would be made, and whether tax payments would be made. Savage also decided which creditors would be paid. In performing each of those corporate activities Savage acted within the scope of his employment and with the specific authority of the Debtor.

In August 1991, Worroll discovered that Savage had failed to timely file employment tax returns, failed to timely make tax deposits, and failed to timely pay the Debtor's employment tax liabilities for 1990 and 1991. These liabilities are outstanding and being paid pursuant to the confirmed plan of reorganization in this case. During 1990 and until August of 1991, Worroll had no knowledge of the Debtor's failures to file, deposit or pay its employment tax liabilities.

Worroll was the only witness who testified at the February 17, 1994 hearing and the Court finds that he was credible and believable. Worroll did not know why Savage failed

to timely file the returns nor did he know why Savage chose to pay some bills but chose not to pay the IRS. Worroll, despite being a shareholder and president of the Debtor, relied exclusively on Savage for the handling of tax matters during the periods in question. Worroll did not generally inquire about the financial status of the business.

The August 26, 1991 Contract for Sale of Stock transferred all ownership interest in the Debtor to Worroll for the sum of $10.00 plus additional consideration, including Worroll's agreement to cause the Debtor to pay the outstanding obligation to the IRS and to pay a debt owed to Gateway American Bank, which Savage had personally guaranteed. The sales contract did not require the Debtor or Worroll to repay a $71,648.50 loan payable to Savage. The IRS did not contact Worroll or visit the salon until after Worroll became the sole owner in the fall of 1991. When he assumed control of the Debtor, Worroll employed a payroll company and an accountant to ensure full compliance with the Debtor's employment tax obligations.

During 1990, the first full year of operation under Savage's management, the Debtor lost $45,731.00. During 1991, the year in which Worroll assumed ownership and control, the Debtor earned a profit of $17,686.00. After Worroll assumed control of the Debtor in August 1991 and through the date of trial, the Debtor timely made all tax deposits and timely paid all employment tax liabilities. The Debtor also remained current with its trade creditors and current in its plan payment obligations.

After Savage relinquished control of the business in the fall of 1991, the company's profitability and ability to pay its tax obligations improved significantly, without any apparent substantial increase in revenues. This suggests that Savage mismanaged the business and may have improperly spent or diverted some of the money of the business. However, there is no direct evidence of Savage converting, embezzling, or siphoning off money from the business. Moreover, Worroll has not attempted to determine whether Savage embezzled money and Savage has never been prosecuted criminally for conduct related to the Debtor's finances.

The IRS asserts in its Amended Claim that, pursuant to 26 U.S.C. §§ 6651(a)(1), 6651(a)(2) and 6656(a), the Debtor owes a total of $14,723.82 in penalties, plus interest, for its failure to timely file tax returns, failure to timely pay taxes, and failure to deposit taxes over six quarters between September 1990 and December 1991.

### *DISCUSSION*

Sections 3102(a) and 3402(a) of the Internal Revenue Code, Title 26, United States Code ("I.R.C." or "Code") require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. Section 7501 of the Code provides that the withheld taxes shall be held by the employer as a special trust fund for the benefit of the United States. Section 3403 provides that the employer is liable for the payment of the taxes required to be withheld under Sections 3102 and 3402. The employer is required to report the amount of withheld taxes on its payroll tax return (Form 941). This return and a payment of employment taxes is due every calendar quarter. I.R.C. § 6011(a). An employer is required to deposit the employment and income taxes withheld from employees' wages in an approved bank at various intervals during a calendar quarter depending on how much is withheld. I.R.C. § 6302 and 26 C.F.R. § 301.6302–1. Thus, under the controlling statutes and regulations, it is the employer's obligation to file timely returns, and to make timely employment tax deposits and payments.

If a taxpayer fails to comply with the foregoing statutory requirements, the taxpayer may be liable for an addition to tax. In imposing additions to tax for failure to comply with the statutory requirements, Congress sought to ensure timely filing of tax returns and timely payment of tax liability. *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1985). Sections 6651(a)(1), 6651(a)(2), and 6656(a) of the Code impose additions to tax where the taxpayer fails timely to file a required return, fails timely to pay a tax, and fails timely to make required deposits of taxes. Each provision states, however, that

the addition to tax shall not be imposed if the taxpayer's failure to comply with the statutory requirement was due to reasonable cause and not due to willful neglect. Whether the Debtor meets this standard is the sole issue for decision.

■ The taxpayer bears the "heavy burden" of proving that its failure to comply with the statutory requirements did not result from willful neglect and was due to reasonable cause. *Boyle*, 469 U.S. at 245, 105 S.Ct. at 689. Reasonable cause is not defined in the Internal Revenue Code, but in its Treasury Regulations, the IRS indicates that a delay in filing a return or failure to pay taxes is due to a reasonable cause if the taxpayer "exercised ordinary business care and prudence" but nevertheless was unable to timely file the return or pay the tax. 26 C.F.R. § 301.6651–1(c). In addition, the IRS has identified certain specific reasons for the late filing of a return which, if established by the taxpayer, will be accepted as "reasonable cause." *See Roberts v. Commissioner of Internal Revenue*, 860 F.2d 1235, 1241 (5th Cir.1988), citing Internal Revenue Manual (CCH) § 4562.2.[1] None of these specific circumstances is present here.

The Debtor claims that its failure to timely file the tax returns at issue, to timely make tax payments, and to timely make tax deposits was due to the unauthorized conduct of Savage. Since the failures were caused by the acts and omissions of Savage, the Debtor argues that the evidence establishes reasonable cause and the absence of willful neglect. The Debtor also argues that Savage's misconduct "disabled" it from complying with its tax obligations such that the penalties should not be imposed. Upon analysis, both of these arguments fail.

### A. Reliance on a Designated Agent Is Not Reasonable Cause

■ The Supreme Court held in *Boyle* that statutory requirements including the

timely filing of returns and the payment of taxes are solely the duties of the taxpayer and are nondelegable. 469 U.S. at 252, 105 S.Ct. at 693. In *Boyle*, the question was whether an estate was liable for the late filing penalty provided in Section 6651, where the executor delegated the duty to file the required estate tax return to the attorney for the estate and the attorney failed to do so in a timely manner. The Court held that the estate's reliance on its attorney to file the estate tax return was not reasonable cause for the late filing of the return, and explained as follows:

> Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations.... That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute.

469 U.S. at 249–50, 105 S.Ct. at 692.

The Supreme Court's reasoning in *Boyle* is applicable in this case. Congress has placed on the taxpayer Debtor the burden of timely filing employment tax returns, timely making employment tax deposits, and timely making employment tax payments. Since the Debtor has a personal, nondelegable duty to file, pay and deposit taxes on time, the Debtor's reliance on Savage to meet these tax obligations does not constitute "reasonable cause." *Boyle*, 469 U.S. at 251–52, 105 S.Ct. at 692–93.

■ Reliance on an agent has also been rejected as a defense with respect to late-filed return penalties in cases involving corporate taxpayers. *See Alton OB–Gyn, Ltd. v. United States*, 789 F.2d 515, 516 (7th Cir.1986) (failure of agent to file tax returns

---

1. These circumstances include unavoidable postal delays, the taxpayer's timely filing of his return with the wrong IRS office, the death or serious illness of the taxpayer or a member of the taxpayer's family, unavoidable absence of the taxpayer, the destruction by casualty of the taxpayer's records, residence, or place of business, the taxpay-

er's reliance on the erroneous advice of an IRS officer or employee, the IRS's failure to furnish the taxpayer with the necessary forms in a timely fashion, the taxpayer's inability to obtain necessary documents, and the taxpayer's reasonable reliance on a tax advisor's advice that no return should be filed.

does not constitute "reasonable cause"); *Millette & Associates, Inc. v. Commissioner of Internal Revenue*, 594 F.2d 121, 124–25 (5th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 207, 62 L.Ed.2d 135 (1979) (reliance on tax advisor to timely file return does not excuse late penalty). Thus, this corporate Debtor cannot be excused from complying with the statutory requirements on the ground that it relied on one of its employees to fulfill those obligations.

Since a corporation can only act through its employees or officers, the failure of a corporation to timely file tax returns or to timely make required tax payments or deposits almost invariably will be the result of the failure of one or more of the corporations's employees or officers to carry out his or her assigned duties. If an employee or officer's non-performance of duties was deemed to be reasonable cause, the IRS would rarely be able to impose tax penalties on a corporation. As recognized in *Perugino v. United States*, 85–1 U.S. Tax Cas. (CCH) ¶ 9215, 1984 WL 1445 (M.D.Pa.1984), allowing a taxpayer to escape late filing and late payment penalties by blaming its agent:

> would open the door to the possibility of widespread collusive tax evasion with the government having nowhere to turn. The taxpayer would argue that his accountant was at fault, the accountant would argue that it is not his debt and the United States would be left holding an empty purse.

■ Moreover, under the doctrine of *respondeat superior*, a corporation is bound by the actions of its agent when the agent acts within the scope of his or her actual or apparent authority. Here, there is no dispute that the Debtor authorized its vice-president Savage to handle all its federal employment tax obligations. It is also undisputed that Savage, as the officer responsible for tax matters, repeatedly failed to timely file employment tax returns, repeatedly failed to timely make payroll tax deposits, and repeatedly failed to timely make tax payments. Absent an exception to the general principles of agency, the corporation is bound by these actions.

The Debtor may have exercised ordinary business care and prudence in designating the tax matters to Savage. It is less clear that the Debtor exercised ordinary care in relying exclusively on Savage without any inquiry or review. Moreover, even if the Debtor reasonably assumed that Savage, without any form of review, would comply with the statutes, Savage's failure to do so is a matter between Savage and the Debtor, but does not excuse the Debtor from complying with its tax obligations. *See Boyle*, 469 U.S. at 250, 105 S.Ct. at 692; *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 317 (9th Cir.1993). Congress has charged the Debtor, as a corporate taxpayer, with an unambiguous duty to file, pay, and deposit employment taxes, and the Debtor cannot avoid responsibility by simply relying on Savage, its agent, to comply with the statutes. In sum, the Debtor's exclusive reliance on Savage to handle all tax matters does not constitute "reasonable cause" for the Debtor's failure to comply with its tax obligations.

**B. The Debtor was not "Disabled" From Complying With its Tax Obligations By Savage's Misconduct**

■ In *Boyle*, the Supreme Court established a simple and rigid rule that reliance on an agent to file a timely return when the due date of the return was ascertainable by the taxpayer does not constitute reasonable cause excusing the taxpayer from statutory penalties for late filing. The Court, however, distinguished the issue of *reliance* on an agent from the question of the taxpayer's potential *disability* from complying with its obligations as a result of its agent's misconduct. Thus, a court may find reasonable cause "if a taxpayer convincingly demonstrates that a disability beyond his control rendered him unable to exercise ordinary business care." *In re Sanford*, 979 F.2d 1511, 1514 n. 8 (11th Cir.1992), *citing Boyle*, 469 U.S. at 248–49 n. 6, 105 S.Ct. at 691 n. 6. Here, the Debtor argues that Savage's misconduct disabled the Debtor from timely fulfilling its tax obligation, and that it is therefore entitled to relief from the late penalties.

The Debtor relies heavily on *Matter of American Biomaterials Corp.*, 954 F.2d 919 (3d Cir.1992). In that case, a debtor corporation's chief executive officer and chief financial officer, the sole people in charge of filing and paying the taxes, embezzled corporate funds. The bankruptcy court and district court found that the officers' intentional tortious acts against the corporation "incapacitated" the debtor and rendered it financially unable to comply with the tax laws. Therefore, the lower courts found that the debtor's failure to file, deposit, and timely pay its employment taxes were excused for reasonable cause and a lack of willful neglect. The Third Circuit, after taking judicial notice of the officers' guilty pleas to criminal embezzlement charges and distinguishing their conduct from mere financial mismanagement, affirmed, noting that the doctrine of *respondeat superior* does not apply to criminal acts against the corporation itself. *American Biomaterials*, 954 F.2d at 927.

■ Here, unlike in *American Biomaterials*, there is no competent evidence that Savage embezzled funds from the Debtor or that any intentional tortious misconduct against the Debtor otherwise rendered the corporation financially unable to comply with its tax obligations. First, financial difficulties do not affect a taxpayer's ability to file returns in a timely fashion. Second, with respect to the late deposit and late payment penalties, mere financial difficulties or cash flow problems are insufficient to establish "reasonable cause" by virtue of financial disability. This is particularly clear where, as here, the corporate taxpayer continued its business operations as a going concern during the six quarters at issue, but chose to pay creditors other than the United States. *See Wolfe v. United States*, 612 F.Supp. 605, 608 (D.Mont.1985), aff'd, 798 F.2d 1241 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987):

> Almost every non-willful failure to pay taxes is the result of financial difficulties. But to allow businesses to postpone filing returns and paying taxes until economic conditions improve would severely restrict the Service's ability to raise revenue for the operation of the federal government.

If every taxpayer's cash flow problems were sufficient to justify delay in payment of taxes, such an exception would swallow the rule.

■ In sum, the Court rejects the Debtor's argument that it was "disabled" from complying with its tax obligations because of Savage's conduct or alleged misconduct. Financial difficulties that do not "incapacitate" a debtor, and are not the result of criminal or intentional, tortious conduct against the debtor corporation by its own officers or agents, are insufficient to establish "reasonable cause."

### CONCLUSION

A taxpayer, particularly a corporate taxpayer, bears a heavy burden in proving that its failure to comply with tax obligations was due to "reasonable cause." The Debtor in this case may have reasonably relied on Savage, its majority shareholder and vice-president, to handle its business affairs, including the filing of tax returns and payment of taxes, but the failure of a designated agent to fulfill the statutory duties is not reasonable cause for noncompliance with filing, payment and deposit requirements. Furthermore, in the absence of proof that Savage engaged in criminal or intentional tortious conduct which financially disabled the corporation, Savage's actions do not establish reasonable cause within the meaning of sections 6651 and 6656 of the Internal Revenue Code.

At first blush, the result here may appear harsh. The Debtor argues that Worroll, a financially unsophisticated hair stylist, will suffer the brunt of the penalty as sole owner of the Debtor, when in large part he was a victim of Savage's wrongdoing. The problem with the Debtor's equitable argument is that the liability at issue here is corporate, not personal. The IRS did not impose a penalty on Worroll individually. If it had, Worroll probably could have successfully challenged the personal assessment since he did not personally play a role in payroll and payroll tax matters.

■ The penalties in this case are different. These are placed on corporations to further a Congressionally mandated interest in ensuring the timely filing and payment of

taxes. The corporation's heavy burden of establishing reasonable cause is not lessened simply because a largely innocent individual is now the corporation's owner.

A separate order will be entered overruling the Debtor's objection to the IRS claim.