**In re SYKES & SONS, INC., Debtor.**

**Bankruptcy No. 94–15466.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 20, 1995.

508

Alan L. Frank, Alan L. Frank & Associates, Philadelphia, PA, for Debtor.

Shannon L. Hough, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, for Internal Revenue Service.

Joseph Minni, Philadelphia, PA, United States Trustee.

*OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Objection of Sykes & Sons, Inc. (the "Debtor") to the Proof of Claim of the Internal Revenue Service (the "IRS") in the amount of $528,724.34, for, *inter alia,* unpaid income and social security taxes,[1] interest and penalties for the first quarter of 1992 through the fourth quarter of 1993. The Debtor does not dispute its tax liability, but rather, requests the Court to reduce the claim by abating penalties in the amount of $137,240.38 and corresponding interest on the penalties[2] imposed for failing

---

1. Employers are required to withhold federal social security (FICA) and income taxes from the salaries paid its employees and to pay over the withheld amounts to the United States. Internal Revenue Code ("IRC") §§ 3101, 3102(a), 3102(b), 3401, 3403. Because of this obligation, these taxes are commonly referred to as trust fund taxes.

2. Debtor seeks to abate interest in the amount of $46,203.01 which is all the interest claimed by the IRS. We question whether all the claimed interest could be related to the unpaid penalties. Given our disposition of this contested matter, we will not have to determine which interest, if any, is attributed to principal and which to penalties. We also note that the penalties and inter-

to timely file, deposit, and pay its trust fund taxes.

A hearing was held on August 4, 1995. Post-trial submissions have been received and this matter is now ready for decision. For the reasons stated herein, the debtor's Objection is denied.

*BACKGROUND*

The uncontroverted facts are as follows. Robert Sykes, Sr. ("Robert Sr.") founded the Debtor, a full-service mechanical contracting company, in 1962. In 1972, the Debtor was incorporated in Pennsylvania and 100% of the stock was issued to Robert Sr.'s wife, Evelyn. By 1983, Robert Sr., Evelyn and their sons, Robert Sykes, Jr., David Sykes, Paul Sykes, and Douglas Sykes, were all working in the business.[3] Robert Sr. was, according to the testimony of Evelyn and David, the person in charge of the business and made all the business decisions. Record at 18, 64–65. In particular, he was solely responsible for estimating the cost of all of the Debtor's major projects and formulating a single bid price for submission to potential customers at which the Debtor would agree to perform the job regardless of the actual cost. Uncontested Facts ¶ 19, Record at 47. To ensure the accuracy of such estimates, Robert Sr. was almost always required to do on-site inspections. Uncontested Facts ¶ 20, Record at 49.

On May 9, 1983, Robert Sr. was diagnosed with ulcerative colitis. During the early part of 1992, the colitis caused Robert Sr. to suffer from such frequent bowel movements and rectal bleeding that he was disabled from visiting job sites to prepare his bids. In May of 1992, Robert Sr. was diagnosed with terminal cancer of the larynx and lungs. He continued working at the office until the first quarter of 1993. When he was too ill to work at the office, he continued to retain management control of the Debtor from his home. Record at 34. In May or June of 1993, Evelyn began taking care of Robert Sr. full-

time at home. Although Robert Sr. still made the decisions about which bills to pay in 1992 and 1993, in September of 1993, Douglas began paying the bills because his father became too ill. Uncontested Facts ¶¶ 49, 50. However, until one week before Robert Sr.'s death, he was directing Douglas as to which bills to pay. Record at 78. He also was solely responsible for filing the corporation's tax returns and paying its taxes.[4]

Prior to Robert Sr.'s death, there was no other person at the Debtor, including his sons, who was familiar with the estimating function. While Evelyn, who knew that on-site inspections were very important to the bidding process, had reason to believe at the beginning of 1992 that Robert Sr.'s ability to estimate was materially altered, she took no steps to address the problem. According to her testimony, Robert Sr. did not want to turn over this task. When asked by her counsel whether it was reasonable to leave the bidding with Robert Sr., she stated "[i]t wasn't reasonable, it was necessary.... For him, yes." Record at 30.

During the first calendar quarter of 1992, Robert Sr. improperly estimated a bid which resulted in a loss to the Debtor of approximately $8,500.00. Debtor first began falling behind on its trust fund tax obligations in the first calendar quarter of 1992. Robert Sr.'s improper bid estimates continued in the second calendar quarter of 1992, resulting in losses of $18,000.00, the effect of which was spread over the second and third quarter of 1992. These miscalculations were due to Robert Sr.'s preoccupation with his cancer diagnosis, coupled with his ongoing ulcerative colitis problem which prevented him from making on-site inspections. Uncontested Facts ¶ 21–26.

In the third calendar quarter of 1992, Robert Sr. undervalued a bid by 25% and secured another project with a miscalculated bid, which resulted in a loss of $30,000.00, the

est are part of the secured portion of the IRS's claim.

3. Evelyn started in 1975, David and Douglas in 1979 and Paul in 1983. Joint Pre–Trial Statement, Part II. Statement of Uncontested Facts (the "Uncontested Facts") ¶¶ 12–15.

4. Beginning in the second quarter of 1992, Debtor retained Paychex, Inc. to compute its weekly payroll and to prepare its Form 941 and 940 Federal Tax Returns. Paychex mails the Form 941 to the Debtor approximately two weeks after the quarter ends. Uncontested Facts ¶ 45.

effect of which was spread over a 6–month period, ending in the second quarter of 1993. With no one capable of finding new clients, from March 1993 to November 1993, Debtor only participated in five significant projects which earned a gross profit of $11,000.00. *Id.* ¶¶ 27, 29–31.

In 1992 and 1993, Evelyn, Doug, Paul and Robert Jr. were all aware of an employer's duty to withhold payroll taxes from its employees and to file quarterly employment tax returns. During this period, neither Evelyn nor Douglas had any discussions with Robert Sr. who took care of the taxes and returns, about filing and paying, Record at 42, 81, nor were they aware of the Debtor's failure to do so. Douglas learned in June 1993 from an IRS letter that the Debtor didn't pay its taxes but did not show the letter to his father. Record at 71–72. Evelyn knew that the company was losing money although not the amount since that was her "husband's area." Record at 31. Without Robert Sr.'s knowledge, she borrowed $14,000 on his life insurance to pay payroll, and with his knowledge, made two loans to the Debtor aggregating $40,000 "to keep the company going, I wanted to keep it going while my husband was alive." Record at 31–32, 38. Some of the money was used for payroll; she could not identify the use of the rest.

On September 25, 1993, Robert Sr. died. After his death, managerial functions were divided between the family members. David and Paul were responsible for field work, including the bidding function. Paul and Robert Jr. submitted winning bids for two major projects in December 1993. Due to lack of experience and guidance, Paul and David miscalculated the project expenses so that a $90,000 loss was incurred. Uncontested Facts ¶¶ 33, 36, 38–40.

In the Joint Pre–Trial Statement, filed with this Court on July 21, 1995, the IRS conceded that the debtor's failure to pay, file,

and deposit trust fund taxes was not due to willful neglect. The Debtor claims that Robert Sr.'s degenerative illnesses caused it to experience substantial financial difficulties which justified its failure to timely file, deposit, and pay its trust fund taxes.[5] The Debtor argues that it simply lacked the funds to simultaneously continue functioning as a business and satisfy its tax liability. Therefore, the Debtor chose to satisfy some of its trade creditors and its payroll in an attempt to stay solvent.

The IRS, on the other hand, claims that financial difficulties do not justify a taxpayer's failure to meet trust fund obligations. Because taxes withheld from employees are held in trust for the exclusive use of the government, the IRS argues that the Debtor was forbidden from using trust fund monies to pay its other debts or payroll.

*DISCUSSION*

■ The IRS can impose a penalty for failure to file taxes under 26 U.S.C. § 6651(a)(1), for failure to deposit taxes under 26 U.S.C. § 6651(a)(2) and for failure to pay taxes under 26 U.S.C. § 6656(a), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The taxpayer bears the "heavy burden" of proving that its failure to comply with the statutory requirements did not result from willful neglect and was not due to reasonable cause. *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1984). Since the IRS has stipulated that willful neglect is not implicated in this case, our focus is on the applicability of the reasonable cause exception to the imposition of these penalties.

■ The Treasury Department regulations explain what constitutes "reasonable cause" under these provisions of the Internal Revenue Code.[6] Reg. § 301.6651–1(c)(1) pro-

---

5. Presumably in recognition of the well-established case law that reliance on an agent does not constitute reasonable cause under IRC §§ 6651 and 6656, Debtor does not claim that Robert Sr.'s illness disabled the Debtor from filing, paying and making tax deposits to the IRS. *See* page —— *infra.*

6. *See generally* 26 C.F.R. § 1 et seq. Hereinafter the regulations will simply be referred to as Reg. § ———. Regulations developed by the Secretary of the Treasury that have "long continued without substantial change" and "apply to unamended or substantially reenacted statutes," are deemed to have the effect of law. *United States v. Correll,* 389 U.S. 299, 305–06, 88 S.Ct. 445,

vides the following explanation of reasonable cause for failure to file a tax return or to pay tax:

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for the payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161–1(b) of this Chapter) if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax. Thus, for example, a taxpayer who incurs lavish or extravagant living expenses such that the remainder of his assets and anticipated income will be insufficient to pay his tax ... [or] a taxpayer who invests funds in speculative or illiquid assets has not exercised ordinary business care and prudence in providing for the payment of his tax liability ... A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

Reasonable cause thus requires a showing of ordinary business care and prudence and in the case of failure to pay,[7] the inability to pay or the sufferance of undue hardship. Undue hardship is explained in Reg. § 1.6161–1(b), as follows:

> The term "undue hardship" means more than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer from making payment on the due date of the amount with respect to which the extension is desired.

■ The Debtor argues that it had reasonable cause for failure to file, deposit and pay its trust fund taxes because the illness of Robert Sr. rendered the debtor financially unable to meet its tax obligations and simultaneously continue operating as a business. This, the debtor claims, would have been an undue hardship. In support of that position, the debtor cites *Glenwal–Schmidt v. United States*, 78–2 U.S.T.C. P9610, 1978 WL 4527 (D.D.C.1978), *In re Pool & Varga, Inc.*, 60 B.R. 722 (Bankr.E.D.Mich.1986), and *In re Arthur's Industrial Maintenance*, 1992 WL 132563 (Bankr.W.D.Va. April 9, 1992), *aff'd*, 1993 WL 79206 (W.D.Va. Jan. 7, 1993). Assuming that the Debtor's position is well taken regarding the undue hardship it would have experienced had it paid its withholding taxes, we find that it has ignored the other requirement of reasonable cause, that the taxpayer have exercised ordinary business care or prudence. To find reasonable cause without the latter would as the IRS has argued, allow the exception to swallow the rule. As the court noted in *Wolfe v. United States*, 612 F.Supp. 605 (D.Mon.1985), *aff'd*, 798 F.2d 1241 (9th Cir.1986), *opinion amended*, 806 F.2d 1410 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987), "[a]lmost every non-willful failure to pay taxes is a result of financial difficulties." *Id.* at 608.

448–49, 19 L.Ed.2d 537 (1967). Reg. § 301.6552–1 has not been amended since 1973 and the statute to which it applies, namely 26 U.S.C. § 6651, while amended in 1989, was not amended in such a way as to affect the definition of reasonable cause. Therefore, the regulation is deemed to have the effect of law.

7. Reg. § 301.6656–1, which addresses the failure to deposit, does not include an explanation of what constitutes "reasonable cause" for a failure to deposit. However, since the failure to deposit is sufficiently similar to the failure to pay, we conclude that the same standard should apply in both situations.

We do not find *Glenwal–Schmidt* to hold otherwise. In that case, the taxpayer was a construction contractor which entered into an agreement to build housing for the United States Navy. During the course of the work, various disputes arose between Glenwal and the Navy regarding the quality and timeliness of the work. As a result, the Navy began withholding payments otherwise due. The contract obligated Glenwal to continue performance pending resolution of the disputes which the court found were unduly protracted by the Navy contrary to the government regulations that negotiations regarding indebtedness not be unduly prolonged. To avoid defaulting on the contract, Glenwal elected to use its limited cash to pay expenses essential to perform the contract and many of its vendors and certain withholding taxes were not paid. The amount of payments withheld by the Navy was approximately double the amount of the taxes due. When, almost two years later, the disputes were resolved, Glenwal paid the taxes, including the assessed penalties, from the settlement funds. It then sued for a refund of the penalties, asserting that its failure to pay the taxes was due to reasonable cause under § 301.6651–1(c)(1). The district court held that when faced with a choice of defaulting on its contract or paying the tax, Glenwal could not have paid the tax without suffering undue hardship. *Id.* at 84,972. The court also found under these circumstances, including Glenwal's inability to foresee that the Navy would not comply with its own regulations regarding the prompt resolution of disputes, that it had exercised ordinary business care and prudence. Finding both prongs of reasonable cause, *i.e.*, undue hardship and ordinary business care, the penalties were forgiven.

*Pool & Varga* and *Arthur's Industrial Maintenance* rely on *Glenwal–Schmidt*. While recognizing that reasonable cause requires the exercise of ordinary care, they appear to hold that the failure to pay taxes in the face of serious financial problems is reasonable so long as the Debtor did not act recklessly or in any way to jeopardize its ability to pay its taxes, *Pool & Varga*, 60 B.R. at 727, or demonstrates that the expenditures made were necessary and reasonable,

*Arthur's Industrial Maintenance*, 1992 WL 132563 at *8.

■ We believe that Congress had something more in mind in imposing an ordinary care requirement in addition to the undue hardship test. If ordinary care can be satisfied by showing that absent payment of other creditors, the business would have failed, ordinary care and undue hardship are in effect the same. To the extent these cases can be read to hold otherwise, we do not choose to follow them. Rather, we accept the IRS's position that financial duress alone does not constitute reasonable cause such as to excuse the taxpayer from timely filing, deposit, and payment of trust fund taxes. *In re Brewery, Inc. v. United States,* 33 F.3d 589 (6th Cir. 1994); *C.J. Rogers, Inc. v. United States,* 1990 WL 255586 (E.D.Mich. Sept. 17, 1990); *Wolfe v. United States, supra; In re Savage,* 179 B.R. 342 (Bankr.S.D.Fla.1995).

■ In evaluating whether the Debtor has established that it exercised ordinary business care and prudence, we are further guided by Reg. § 301.6651–1(c)(2) which states:

> In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, consideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayers' efforts to conserve assets in marketable form may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person.

The taxes at issue here are trust fund taxes. It has been recognized that such taxes are "not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government." *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir. 1987); *accord* IRC § 7501. These funds are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose. *Gephart v. United States, supra,* at 472. *See also Roth v. Unit-*

*ed States,* 779 F.2d 1567, 1571 (11th Cir. 1986); *Newsome v. United States,* 431 F.2d 742, 746 (5th Cir.1970). Thus, the test here is more stringent than would be the case if the unpaid taxes were income or other taxes.

▮▮▮ We do not find that the Debtor has proven that it used ordinary business care and prudence in allowing first Robert Sr. and then his family to ignore the Debtor's duty to file, pay and deposit taxes. As the Debtor acknowledges, the illness of Robert Sr. and the inexperience of the family members who took over the business upon his death do not excuse the Debtor's failures. It is well established that Congress placed the burden of compliance with these duties on the corporation, not its agents. Reliance on an agent is not reasonable cause for nonperformance. *Boyle,* 469 U.S. at 253, 105 S.Ct. at 693.[8]

▮▮▮ The Debtor's sole justification for not filing tax returns and not paying and depositing the taxes is that the Debtor was experiencing financial difficulties. Even the court that agreed with the Debtor's position regarding the failure to pay and deposit taxes refused to absolve the taxpayer from its failure to file its return. *Pool & Varga,* 60 B.R. at 727 ("financial difficulties have no effect on a taxpayer's ability to file returns in

a timely fashion"). With respect to paying and depositing the tax, there is nothing in this record that would support the Debtor's decision to utilize its resources to pay other debts to the exclusion of its trust fund taxes. The cause of the Debtor's financial duress was not temporary. Unlike *Glenwal,* this was not a situation in which the Debtor could expect to have sufficient funds to pay its tax obligations at a later date. Robert Sr. was permanently disabled from properly bidding on the jobs and the results of his flawed performance could be anticipated to continue so long as he was left in charge of that function. During that time, the sons did nothing to acquire the skills necessary to learn the bidding function from him nor did they assist him by being his eyes and ears on the job sites. It was neither reasonable, as Evelyn acknowledged, to leave Robert Sr. in charge of the bidding nor reasonable for the Debtor not to prepare for the transition to new management given the inevitability of Robert Sr.'s demise. Given Robert Sr.'s illness and Evelyn's awareness of the Debtor's financial problems, it was unreasonable not to ask any questions about the Debtor's performance of its tax obligations.[9] Rather, it would appear that the family made a personal decision born out of their duty to and love

8. The Supreme Court, however, distinguished misplaced reliance on an agent to perform a known duty from the question of the taxpayer's disability. *Id.* 469 U.S. at 248–49 n. 6, 105 S.Ct. at 692–93 n. 6. Where the employee is acting outside the scope of his authority, his actions will not be attributed to the corporation. *Matter of American Biomaterials Corp.,* 954 F.2d 919, 924 (3rd Cir.1992). In *Biomaterials,* the Court found that where the persons in control of the corporation committed the criminal act of embezzlement thus acting without apparent authority, and those crimes were proved to be the cause of the corporation's failure to file, the corporation was not *automatically* vicariously responsible for penalties. *Id.* at 927. If, however, the corporation is not vicariously liable, it still must establish adequate internal controls for reasonable cause to be found. The Third Circuit Court of Appeals did not reach the question of whether the controls were adequate because the IRS argued only that vicarious liability existed as a matter of law. *Id.* at 928.

In this case, we find that Robert Sr. acted within his apparent authority and moreover, the corporation failed to establish adequate controls over his conduct. We are mindful in finding an

absence of adequate controls that Robert Sr. was the person managing the corporation's activities and presumably would have been resistant to giving up control. The Court in *Conklin Brothers of Santa Rosa, Inc. v. United States,* 986 F.2d 315, 318 (9th Cir.1993), relying on *Biomaterials,* states that corporate disability may be measured by whether the corporation can control the person responsible for the corporation's deficiency. However, it also noted that the errant controller was within the corporation's control. In this case, we note that there was no attempt to control Robert Sr. The family chose not to ask questions or otherwise confront him during his illness which, while understandable for a family, was not prudent of the corporation. *See Universal Concrete Products v. United States,* 1990 WL 106584 (E.D.Pa. July 24, 1990), *aff'd,* 941 F.2d 1204 (3d Cir.1991). Whether an attempt to exercise control would have been successful is unknown.

9. The retention of Paychex to prepare payroll checks and the federal tax forms did not evidence internal controls to assure returns were filed and taxes paid and deposited. *In re Roberts Metal Fabrication, Inc.,* 147 B.R. 965, 966–67 (Bankr.D.Kan.1992).

of their husband and father to allow him to complete his life at the helm of the business he founded over thirty years before. In choosing not to confront the problems of the business, the Debtor did not exercise ordinary business care. Because we cannot find that the Debtor exercised ordinary business care and prudence, we cannot find reasonable cause as defined by the applicable statutory provisions of the IRC. Accordingly, we shall overrule Debtor's objection to the IRS proof of claim and allow the claim, including the penalties assessed under §§ 6651(a)(1) and (a)(2) and 6656(a) as filed.

This decision, we would note, is rendered after a painstaking review of the applicable regulations and cases construing the applicable statute and regulations. Applying the statute and regulations to the facts here has left this Court with no discretion but to sustain the penalty. We are not, however, sanguine about the result. While we note that the penalty is visited upon the corporation, not the members of the family, the corporation's lack of ordinary business care and prudence nonetheless flows from the inherent conflict the family had: their husband and father, after suffering for years from a debilitating and undignified illness, was dying. They chose to allow him to continue to manage the business he had always controlled notwithstanding his inability to do so because "it was necessary for him." His widow was determined, to the point of covertly borrowing against his life insurance which presumably was intended to secure her future, to keep the business going while he was alive. A penalty is intended to punish. It saddens this Court to affirm the IRS's punishment of this family business, which is seeking to reorganize under Chapter 11, for the family's very human and understandable decision.

An order consistent with the foregoing Memorandum Opinion shall be entered.

### ORDER

**AND NOW,** this 20th day of October, 1995, upon consideration of the Proof of Claim of the Internal Revenue Service ("IRS") in the amount of $528,724.34 and Debtor's Objection thereto, and the record of the hearing in this contested matter, and for the reasons set forth in the accompanying Opinion, it is hereby **ORDERED** that the Debtor's Objection is **OVERRULED** and the IRS's claim, including the penalties assessed under 26 U.S.C. §§ 6651(a)(1), 6651(a)(2) and 6656(a), is **ALLOWED.**