**In re McTYRE TRUCKING CO., INC., Debtor.**

**Bankruptcy No. 96–1168–6B1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Feb. 10, 1998.

**590**

Roy S. Kobert, Orlando, FL, for Debtor.

Brian L. Schwalb, Washington, DC, for United States Department of Justice.

### MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court for Final Evidentiary Hearing on Debtor's, McTyre Trucking Co., Inc., Amended Objec-

tion to Claim No. 7 (Doc. 61) filed on behalf of the United States of America by the Internal Revenue Service. Appearing before the Court were Roy S. Kobert, counsel for Debtor, McTyre Trucking Co., Inc.; and Brian Schwalb, United States Department of Justice, on behalf of the United States of America. After reviewing the pleadings, exhibits, evidence, hearing live testimony, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

McTyre Trucking Co., Inc., ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 28, 1996, 11 U.S.C. § 101 *et seq.* The Internal Revenue Service ("IRS"), on behalf of the United States, filed a proof of claim ("proof of claim") in the total amount of $704,193.87 on May 28, 1996. The proof of claim represents the Debtor's unpaid federal employment taxes for twenty eight (28) annual quarters between 1989 and 1995, including penalties assessed against the Debtor for its failure to deposit and failure to pay its payroll taxes.

The Debtor filed an amended objection to the IRS's proof of claim on January 21, 1997 (Doc. 61). The Debtor does not contest the assessment of the underlying unpaid employment taxes and interest thereon. The Debtor seeks to have the penalties in the amount of $134,111.01 abated along with the interest on the penalties imposed by the IRS. The Debtor maintained its failure to deposit and pay its employment tax obligations was "due to reasonable cause and not willful neglect" and "the payroll penalties should be abated in full."[1]

The Debtor has been in the trucking business specializing in hauling oversized and overweight cargo since 1947. The business has been wholly owned by the McTyre family for more than 50 years and its principal officers are John McTyre ("McTyre"), Patri-

---

[1] For several of the quarters at issue, the Debtor made deposits totaling less than half of its reported employment tax obligation. For the third and fourth quarters of 1991, the Debtor made no tax deposits despite incurring tax liabilities of $93,-135.58 and $83,628.07, respectively. The Debtor conceded that there was no reasonable cause for the Debtor's complete failure to make any tax deposits or payment for these two quarters.

cia McTyre ("Mrs. McTyre") and John Sprow. McTyre acknowledged that he has been, since the 1970s, the ultimate decision maker for the company, deciding, among other things, the payment of the Debtor's creditors.

The Debtor alleged that it confronted "severe cash flow problems" caused by the deregulation of the trucking industry, the loss of its largest client which represented 30% of the Debtor's business, the insurance crisis, and loss of its core, bulk hauling business. The Debtor used what little cash flow it had to pay its employees and trade creditors rather than paying its acknowledged federal tax debts. According to McTyre, he made a reasonable business decision to continue operations of the Debtor's business using money that otherwise could have been used to meet the Debtor's payroll tax obligations with the expectation of paying the outstanding employment taxes at a later date.

The IRS filed a motion for summary judgment on the Debtor's amended objection to claim No. 7 on July 11, 1997 (Doc. 95), seeking judgment, as a matter of law, that the Debtor's failure to pay its federal employment tax liabilities to meet its other business needs was not due to "reasonable cause" and due to "willful neglect." The summary judgment motion was denied on August 4, 1997.

From 1989 to 1995, the Debtor's annual gross revenues ranged from $1.6 million to $2.6 million. The Debtor's trucks did not stop running, the company's insurance did not lapse and all the Debtor's employee's received their weekly pay checks. McTyre acknowledged at the final hearing that the Debtor paid insurance premiums for his and Mrs. McTyre's personal automobiles, as well as the premiums for $500,000 of life insurance for McTyre. Loan repayments and payments of rent were paid by the Debtor to McTyre totaling approximately $315,000. The Debtor's trucker salaries, which were approximately $1 million per year, were the

Debtor's largest annual expense. At no time were any truckers laid off. Notwithstanding the Debtor's failure to pay in full the Debtor's employment taxes, McTyre and his wife claimed on their annual 1040 tax returns a credit for the federal taxes withheld from the Debtor's employee wages.

The Debtor, on a minimal scale, changed some of the ways it conducted business. The number of employees went from 50 in 1989 to approximately 20 in 1995. The Debtor additionally reduced the salary of McTyre by 38% and Mrs. McTyre by 53%.[2] The Debtor likewise suspended operations by closing its Miami location.[3]

The Debtor, in particularly McTyre, was aware of the legal duties concerning regular deposits and payments of the Debtor's escalating tax debt. The Debtor's unpaid taxes were assessed pursuant to the quarterly tax returns (Form 941) prepared by the Debtor's bookkeeper and under the supervision of McTyre. The Debtor's Form 941 reported an outstanding balance due for each of the quarters reflected on the IRS's proof of claim.

The Debtor took no prudent business measures to ensure that its federal employment tax debt stopped escalating nor that it was satisfied or reduced. McTyre testified that prior to 1996, the Debtor made minimal efforts to pay the unpaid employment taxes. A separate payroll tax account, which ensured that the employment taxes were timely paid, was voluntarily stopped by the Debtor even though it knew that it always paid its payroll taxes when such a separate account was maintained.

The Debtor did not sell any of its trucks to pay its taxes although it had promised to repay the IRS in a written installment agreement executed on February 6, 1991. McTyre did not borrow against the equity in his 200–acre ranch to pay any of his wholly-owned company's tax debts. The only creditor with whom the Debtor was having diffi-

---

2. While the Debtor was neglecting its federal tax obligations, the company paid as a salary to McTyre and Mrs. McTyre between 1989 and 1995 more than $700,000 and made total payments, which along with salary, exceeded $1 million.

3. The Debtor also changed the way it conducted business by renegotiating lease and storage expenses in Miami and has attempted through institutional lenders and private parties to refinance its debts.

culties with was the IRS. The Debtor filed a voluntary Chapter 11 petition on February 24, 1994, prior to this bankruptcy. The IRS's initiated collection efforts prompted the Debtor to file for relief in this and the previous bankruptcy case. The Debtor owed in excess of $350,000 in federal employment taxes before it filed its first Chapter 11 petition. By the time of the instant filing, the Debtor had allowed its federal payroll tax debt to escalate to over $750.000.00. As of December 1995, the Debtor's total unpaid payroll tax liability for the period between 1989 and 1995, exclusive of interest and penalties, was $382,223.00.

### CONCLUSIONS OF LAW

■ The Internal Revenue Code ("IRC"), 26 U.S.C. §§ 3102(a) and 3402(a) requires an employer to deduct and withhold income and social security taxes from its employees' wages. The withheld taxes are held by the employer as a special trust fund for the exclusive use of the United States. *Id.* at § 7501. *Finley v. United States*, 123 F.3d 1342 (10th Cir.1997); *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986).

■ The employer is also required to report the amount of withheld taxes on its payroll tax return. Form 941 is filed every calendar quarter on the last day of the month following the end of the quarter. Treasury Reg. §§ 31.6071(a)–1(a), 31.6011(a)–4(a)(1). When the employer files its quarterly return, the employer must make full payment of the remaining federal employment taxes due, if any, for that quarter. 26 U.S.C. § 6151; Treasury Reg. § 31.6151–1(a).

■ In an effort to deter improper use of federal payroll taxes held in trust for the government, Congress has imposed a penalty on employers for failing to deposit their federal employment taxes with a government depository on the prescribed date. 26 U.S.C. § 6656(a). Section 6651(a)(1) provides that in case of failure to file a required return, the IRS shall impose a penalty unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(2) uses the identical language in imposing a penalty for failure to pay the amount owed as shown on the return.

■ The Debtor conceded that it violated § 6651(a)(1) for the 3rd and 4th quarters of 1991, so the sole issue is penal tax liability imposed for failing to pay the amount shown as due on the tax return when the return is filed. 26 U.S.C. § 6651(a)(2). The plain purpose of these penalties is to ensure that taxes are deposited and completely paid when due. *United States v. Boyle*, 469 U.S. 241, 249, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985).

■ Penalties shall not be assessed if the taxpayer proves that its failure was "due to reasonable cause and not due to willful neglect." To qualify for this narrow statutory exception, "the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. at 245, 105 S.Ct. 687. Unless both reasonable cause and lack of willful neglect are established, imposition of these penalties are mandatory, see *In re Carlson*, 126 F.3d 915 (7th Cir.1997).

### Willful Neglect

■ The term "willful neglect" is not defined in the IRC. "Willful neglect" is defined pursuant to § 6651 by case law to mean "a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245, 105 S.Ct. 687. In recognition that the debtor taxpayer holds collected funds in trust for the government, willful neglect pursuant to § 6651 is established when the Debtor pays other creditors rather than making tax payments to the United States. *Brewery, Inc. v. U.S.*, 33 F.3d 589 (6th Cir.1994); *Cf. Thibodeau v. U.S.*, 828 F.2d 1499, 1505 (11th Cir. 1987) (discussing analogous IRC § 6672 responsible person provision that willfulness requirement is established by the knowing preference of other corporate creditors over the United States). Thus, liability does not depend on the presence of specific intent to defraud the government—elements associated with criminal liability at issue under 11 U.S.C. § 523(a)(1)(C). *Compare In re Haas*, 48 F.3d 1153 (11th Cir.1995).

Here, lack of willful neglect has not been established. McTyre, the Debtor's ultimate decision maker, was aware throughout the periods in question that his company's federal payroll taxes were going unpaid. He made a calculated business decision to continue the trucking operations of the Debtor's business by using trust fund money to pay the Debtor's employees and trade creditors. As such, the Debtor affirmatively knew it owed considerable federal payroll taxes and it consciously chose not to pay these employment taxes, preferring to pay creditors that were more critical to its trucking operations. "The desire to continue in business is not justification for violating the trust imposed by law to pay taxes." *United States v. Hill,* 368 F.2d 617, 621 (5th Cir.1966). The very nature of a trust fund tax means that it cannot be used to pay the employer's business expenses, including salaries, or for any other purpose. *Roth v. United States,* 779 F.2d 1567, 1571 (11th Cir.1986). "Using these [trust] funds ... to finance the corporation ... constitutes flagrant violation of the law." *Thibodeau v. U.S.,* 828 F.2d at 1506.

Accordingly, the Court finds that the Debtor was voluntarily favoring other creditors over the IRS, and this constitutes a failure to pay its federal employment taxes due to willful neglect.

### Reasonable Cause

"Reasonable cause" is similarly not defined in the IRC. It is addressed, however, in the Treasury Regulations:

> [F]ailure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if he paid on the due date. Treasury Reg. § 301.6651-1(c)(1).

In considering whether a taxpayer exercised ordinary business care and prudence, a court should consider all facts and circumstances of the taxpayer's situation, including the amount and nature of expenditures in light of income received prior to the date payment was due. A taxpayer exercises ordinary business care and prudence "if he ma[kes] reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due." *Id.* "Undue hardship" means more than mere inconvenience. Treasury Reg. 1.6161–1(b). It must be substantial financial hardship, "for example, loss due to the sale of property at a sacrifice price." *Id.*

The use of trust fund money imposes a more stringent standard according to the Treasury Regulations. Treasury Reg. 301–6651–1(c)(2) provides, in pertinent part:

> [C]onsideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayers' efforts to conserve assets in marketable form may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person. *Id.*

Accordingly, the test for "reasonable cause" is more stringent when trust fund taxes are at issue than would be the case if the unpaid taxes were income or other taxes.

The need for capital, even capital necessary to keep the business operating, is not reasonable cause for failing to pay over trust fund taxes. Financial duress cannot constitute reasonable cause such as to excuse the taxpayer from timely payment of trust fund taxes, particularly in light of the more stringent standard articulated in the Treasury Regulations. *Brewery, Inc. v. United States,* 33 F.3d 589 (6th Cir.1994) ("[s]ince the trust fund taxes are for the exclusive use of the Government, the use of trust funds for the payment of other creditors cannot, as a matter of law, constitute reasonable cause for abating the penalties assessed under 26 U.S.C. §§ 6656 and 6651."); *C.J. Rogers, Inc. v. United States,* 1990 WL 255586 (E.D.Mich. 1990); *Wolfe v. United States,* 612 F.Supp. 605 (D.Mont.1985) *aff'd,* 798 F.2d 1241 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107

S.Ct. 3210, 96 L.Ed.2d 697 (1987); *In re Frederick Savage, Inc.*, 179 B.R. 342 (Bankr. S.D.Fla.1995).

The Debtor gained an unfair and superior business advantage over its competitors who equally suffered the negative effects of "deregulation" in Florida's trucking industry and had the occasional loss of a customer. But, who unlike the Debtor, complied with the federal tax laws. The Debtor should not be rewarded by the abatement of penalty taxes for its business decision to circumvent one of its costs of doing business. To do so, would be analogous to the United States supporting the Debtor's business operations involuntarily. The purpose of penalty taxes was put in place to deter this type of improper and flagrant use of trust fund deposits.

At a time when McTyre had actual knowledge that his company had not paid trust fund taxes over to the Government, he paid himself and his wife more than $1 million in salary from 1989 to 1995 and continued to reside at his 200–acre ranch without making any significant effort to use the property as collateral to pay off his company's employment tax debts. The Debtor did not formalize any attempts prior to 1996 to prevent the federal employment tax debt from escalating. It continued to pay all its trucker salaries, which constituted the largest operational expense, did not affirmatively take action to reduce the size of his trucking fleet, and compensated all its insiders for more than seven years after its alleged financial hardships began. The Debtor has not established reasonable cause in exercising ordinary business care and prudence.

The Debtor has not established lack of willful neglect and the existence of reasonable cause in its failing to remit trust fund taxes for taxable years 1989 through 1995. The Debtor's amended Objection to Claim No. 7 filed by the IRS seeking to abate its penalties in the amount of $134,111.01, along with interest on the penalties is due to be overruled.