**In re Dale C. HALLOCK and Georgeanne G. Hallock, Debtors.**

**Bankruptcy No. B–87–06901–PHX–SSC.**

United States Bankruptcy Court, D. Arizona.

Feb. 5, 1993.

Dale C. Hallock, Georgeanne G. Hallock, pro se.

John N. Vogel, Vogel & Damore, Scottsdale, AZ, for trustee.

James D. Fox, Scottsdale, AZ, Chapter 7 Trustee.

Richard Patrick, United States Attorney's Office, Phoenix, AZ.

## MEMORANDUM DECISION AND ORDER

SARAH SHARER CURLEY,
Bankruptcy Judge.

By letter dated January 24, 1992, DALE C. HALLOCK, on behalf of himself and his wife, GEORGEANNE G. HALLOCK (the "Debtors"), requested that this Court set a hearing to determine to what extent a tax penalty due and owing by the Debtors to the United States, collected by the Internal Revenue Service, an agency of the United States ("IRS"), could be discharged in bankruptcy. Pursuant to an Order dated February 6, 1992, the Court scheduled an evidentiary hearing for March 31, 1992, on certain issues. Because the Debtors appeared *pro se* in this matter, a certain amount of time was expended by the IRS, the Debtors, and the Court defining the issues to be resolved. Initially the Court assumed the Debtors wanted a determination of whether the penalty was nondischargeable pursuant to 11 U.S.C. § 523(a)(7), or whether the Court might abate the penalty pursuant to 11 U.S.C. § 505(a).

At the March 31, 1992 hearing, the Court noted that a recent Ninth Circuit decision might have an impact on the proceedings before the Court, and requested further briefing by the parties. The Court also requested that informal discovery proceed, so that the Debtors might review the appellate file maintained by the IRS.

At the May 28, 1992 continued hearing, the Debtors next focused on whether the Debtors had reasonable cause not to pay the tax penalty and whether the penalty should be disallowed pursuant to 11 U.S.C. § 505.

The issues for determination may now be described as:

I. Whether the Bankruptcy Court has subject matter jurisdiction over the controversy;

II. Whether the Debtors are entitled to relief under Section 505 because the IRS failed to abate the penalty pursuant to Section 6404(f) of the Internal Revenue Code;

III. Whether the Debtors have shown that the failure to pay their 1987 federal income tax was due to reasonable cause and not willful neglect; and

IV. Whether the penalty is nondischargeable under Section 523(a)(7).

A Joint Pretrial Statement was filed on June 11, 1992, and an evidentiary hearing was conducted on August 12, 1992. Mr. Hallock testified at the August 12 hearing and exhibits were admitted into evidence. The IRS did not contest the rephrasing of the legal issue set forth in the Joint Pretrial Statement. At the conclusion of the hearing, the Court noted that based upon the evidence presented, the Court believed that the Debtors had failed to carry their burden of proof of showing that their failure to pay their 1987 federal income tax was due to reasonable cause. The Court took the matter under advisement. This shall constitute this Court's findings of fact and conclusions of law. Rule 7052, *Rules of Bankruptcy Procedure*. The Court has jurisdiction over this matter, except for one issue described hereinafter, and this is a "core" proceeding. 28 U.S.C. §§ 1334 and 157.

### Discussion

On October 30, 1987, the Debtors filed their Chapter 7 bankruptcy petition. One of the Debtors testified that a 1986 change in the Internal Revenue Code had created a tax liability for the Debtors. The Debtors had been principals in a ministorage facility. Although $300,000 was paid by the buyer for the facility, the sale required a recapture of the investment tax credits and depreciation previously taken by the Debtors.

The April, 1988 tax return filed by the Debtors, for the 1987 federal income tax year, reflected that the Debtors had busi-

ness and interest income. The Debtors had sold real property in 1973, and were still receiving payments on the sale during the 1987 taxable year. The payment to the Debtors was reflected, in part, as "interest income" paid by the Title Insurance Company of Minnesota in the amount of $1,856.[1] The return also reflected that the Debtors made a cash charitable contribution during the 1987 taxable year in the amount of $10,046.[2] The Debtors also received funds from the ministorage facility in the same taxable year. The Debtors conceded at the time of the trial that in December, 1987 they received a payment in the amount of $20,000 (apparently a principal payment), from the aforesaid 1973 real property sale. The $20,000 payment was received by the Debtors after they filed their bankruptcy petition on October 30, 1987, and was apparently turned over to the bankruptcy trustee.

On April 15, 1988, when the Debtors filed their income tax return for the 1987 taxable year, the tax due and owing was the sum of $29,000. After various setoffs and the payment of $7,420 with the return, the Debtors still owed $19,532 as of June 6, 1988. The liability included a penalty for the failure to pay the tax pursuant to 26 U.S.C. § 6651(a)(2).[3] However, as discussed, the Debtors made a charitable contribution of $10,000 in the 1987 taxable year and received a $20,000 payment concerning the sale of real property.

By September 19, 1990, the Debtors had paid their 1987 federal income tax liability, including the sum of $4,883 for the 26 U.S.C. § 6651(a)(2) penalty.

On October 25, 1990, the Trustee objected to the allowance of the IRS claim in the amount of $22,364.17. (Docket Entry No. 55.) Of course, this claim, filed January 26, 1990, had been paid in full by the Debtors by October 25, 1990. The Trustee also believed that the taxes paid constituted a postpetition liability not subject to administration in the Chapter 7 proceedings. Arguably a portion of the liability due and owing by the Debtors constituted a *prepetition* priority tax claim. No response was filed to the Trustee's objection, and this Court entered an Order on December 6, 1990, disallowing the IRS claim in its entirety and prohibiting payment of said claim from bankruptcy estate assets. (Docket Entry No. 57.) This Order was not appealed, and became a final order of the Bankruptcy Court.

This Court has reviewed the appellate file maintained by the IRS concerning the Debtors.[4] This file reflects that the Appellate Office of the IRS received the file concerning the adjustment of the Debtors' tax penalty in August, 1991. The Debtors had apparently written to the IRS in July of 1991, requesting an abatement of the tax penalty added to the tax pursuant to 26 U.S.C. § 6651(a)(2). The file reflects telephone conversations between the Debtors and the Appellate Office.

The appellate file further reflects that the Debtors received certain partnership distributions and turned over the approximate sum of $20,000 to the bankruptcy trustee as a nonexempt asset of the bankruptcy estate.[5]

After review of all the Debtors' information, the appellate file reflects that the

---

1. See Exhibit 3 in evidence, Schedule B.

2. See Exhibit 3, Schedule A.

3. 26 U.S.C. § 6651(a)(2) (West 1989 & Supp. 1992) provides:
 **§ 6651. Failure to file tax return or to pay tax (a) Addition to the tax.**—In case of failure—
 \* \* \* \* \* \*
 (2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and

not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure it for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues not exceeding 25 percent in the aggregate; ...

4. See Exhibit 2 admitted in evidence.

5. The Court cannot verify the turnover of these funds to the Trustee. However, the Trustee has not yet filed his final report and account.

Debtors had cash on-hand in the sum of $10,000 to pay their taxes by the end of 1987, but chose to make a charitable contribution instead. (Indeed the Court has already outlined what the other exhibits reflect on this point.) Therefore, the Appellate Office recommended that only 50 percent of the tax penalty be abated.[6] This recommendation was approved by the IRS.

By letter dated November 29, 1991, the IRS abated one-half of the tax penalty under the IRS' 26 U.S.C. § 6404 abatement authority.

At the time of the August 12, 1992 trial, the Debtors presented no evidence to support their position that the Debtors had reasonable cause not to pay the tax penalty. Rather, given the Debtors' financial situation at the end of 1987, and the charitable contribution of $10,000 made during the 1987 taxable year, the position of the IRS to abate one-half of the penalty was appropriate.

## I. WHETHER THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION OVER THE CONTROVERSY.

 A threshold issue of this Court's subject matter jurisdiction over this controversy has been presented by the IRS. A bankruptcy court generally has the authority to determine a debtor's tax liability and such a proceeding is a core proceeding. 11 U.S.C. § 505; *See In re Lipetzky*, 64 B.R. 431 (Bankr.D.Mont.1986). However, the IRS questioned to what extent this Court could inquire into the actions taken by the Secretary of the IRS concerning the abatement of the Debtors' penalty.

**6.** See Exhibit 2, handwritten paper numbered "4."

**7.** Section 6404(e)(1) provides:

**(e) Assessments of interest attributable to errors and delays by Internal Revenue Service.—**

**(1) In general.—**In the case of any assessment of interest on—

**(A)** any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

Title 26 U.S.C. § 6404(a) provides, in pertinent part:

(a) General rule—The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which—

* * * * * *

(3) is erroneously or illegally assessed. Specific subsections of Section 6404 focus on the action that may or *must* be taken by the Secretary concerning, *inter alia*, the interest or a penalty that is erroneously or illegally assessed.

In the decision relied upon by the IRS, *Selman v. U.S.*, 733 F.Supp. 1444 (W.D.Okl.1990), the dispute focused on Section 6404(e)(1) and the inaction by the IRS.[7] Section 6404(e)(1) permits the Secretary to exercise his/her discretion in determining whether any interest shall be abated which has accrued on any deficiency or the payment of any tax because of an error or delay of an IRS employee or officer in performing a ministerial act. However, this subsection utilizes the discretionary "may" concerning the action to be taken by the Secretary. The *Selman* Court concluded that no court could review the discretionary decision of the Secretary under Section 6404(e)(1). An abuse of discretion by the Secretary did not give rise to a tax that was erroneously or illegally assessed. The *Selman* Court did opine that its analysis might be different if the decision to abate interest was mandatory rather than discretionary. *Id.* at 1446.

Section 6404(f), however, is applicable to the issues before this Court. That subsection provides:

**(B)** any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

**(f) Abatement of any penalty or addition to tax attributable to erroneous written advice by the Internal Revenue Service.—**

(1) **In general.**—The Secretary shall abate any portion of any penalty or addition to tax attributable to erroneous advice furnished to the taxpayer in writing by an officer or employee of the Internal Revenue Service, acting in such officer's or employee's official capacity.

(2) **Limitations.**—Paragraph (1) shall apply only if—

(A) the written advice was reasonably relied upon by the taxpayer and was in response to a specific written request of the taxpayer, and

(B) the portion of the penalty or addition to tax did not result from a failure by the taxpayer to provide adequate or accurate information.

(3) **Initial regulations.**—Within 180 days after the date of the enactment of this subsection, the Secretary shall prescribe such initial regulations as may be necessary to carry out this subsection.

Section 6404(f) is phrased in terms of mandatory action by the Secretary. Therefore, the analysis of the *Selman* Court may permit review by a court, if the facts require mandatory action by the IRS.

General statutory provisions regarding disputes with the IRS do state that the United States District Court shall have original jurisdiction over civil actions for taxes that are erroneously or illegally collected or assessed.[8] Because of the mandatory language in Section 6404(f) requiring action by the Secretary, a failure to act by the IRS would permit the taxpayer to seek review of the IRS decision in a court of competent jurisdiction.

However, the Debtors herein cannot rely on Section 6404(f) in determining whether the tax penalty should be abated. The Debtors must show that the IRS provided erroneous advice in writing. The appellate file reflects only the letter forwarded by the IRS to the Debtors, stating that after a review of the Debtors' file, the IRS would abate one-half of the tax penalty. Therefore, the mandatory abatement provisions of Section 6404(f) are not applicable to this factual situation. Apparently, the IRS Appellate Office chose to abate one-half of the tax penalty, but it was a discretionary decision within the authority of the IRS. The letter forwarded to the Debtors does not constitute erroneous advice in writing, but merely the discretionary decision of the IRS Appellate Office and the Secretary.

The Debtors have also relied on various provisions of the Bankruptcy Code to request a ruling from this Court on the abatement of a tax penalty. *See* 11 U.S.C. § 505.[9] The Debtors have not previously

---

**8.** 28 U.S.C. 1346(a)(1), (West 1976 & Supp.1992).

**9.** **§ 505. Determination of tax liability.**
(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
(2) The Court may not so determine—
(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or
(B) any right of the estate to a tax refund, before the earlier of—
(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
(ii) a determination by such governmental unit of such request.
(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax—
(1) upon payment of the tax shown on such return, if—
(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or
(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after

contested or adjudicated the amount or legality of the failure by the IRS to abate the penalty in its entirety before any judicial or administrative tribunal. The IRS and the Debtors further agreed that the issue of whether the Debtors properly requested a refund from the IRS was not before this Court.

The recent Supreme Court decisions of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), dictate that the bankruptcy court should be careful in analyzing whether it has subject matter jurisdiction over a controversy. In fact, a review of *Holywell v. Smith*, —— U.S. ——, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) is instructive in this area.

■ In *Holywell,* certain corporations and an individual filed Chapter 11 bankruptcy petitions. The cases were apparently administratively consolidated. However, at the time of confirmation, the debtors presented a consolidated plan of reorganization. The plan created a trust, designated a trustee, and provided for the liquidation of the property. Once certain properties were sold, a dispute arose as to which party would file a tax return and which party would pay the capital gains tax resulting from the sale of the property. Specific provisions of the Internal Revenue Code, such as 26 U.S.C. § 6012, subsections (b)(3) and (b)(4) [10], were discussed in the decision. These provisions focused on the

responsibility of the bankruptcy trustee vis à vis other parties to file tax returns and pay taxes on property that was liquidated. The payment of the taxes by the trustee under the confirmed plan of reorganization would have an effect on the payment to be received ultimately by creditors. Hence, if a bankruptcy court is considering issues under 11 U.S.C. § 505 or another provision of the Bankruptcy Code, it should relate to the bankruptcy estate or to discrete issues concerning whether a particular tax is nondischargeable.

In a separate decision, *In re U.S. v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the Supreme Court stated in *dicta,* that the bankruptcy court could hear and determine whether a debt was nondischargeable.

■ This Court should defer on those issues presented by the Debtors which request this Court to review the discretionary action taken by the IRS. Based upon the aforesaid authority, this Court lacks subject matter jurisdiction to determine such issues. However, this Court does have subject matter jurisdiction to determine whether the tax penalty was originally properly added to the tax paid by the Debtors or whether the tax penalty should be abated in its entirety, because the Debtors have shown reasonable cause for their failure to pay the penalty. This Court also has subject matter jurisdiction to determine whether the penalty constitutes a nondischargeable indebtedness. This does appear

---

such request or within such additional time as the court, for cause, permits;

 (2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

 (3) upon payment of the tax determined by such governmental unit to be due.

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law.

**10.** 26 U.S.C. § 6012, subsections (b)(3) and (b)(4) provide as follows:

**(3) Receivers, trustees and assignees for corporations.**—In a case where a receiver, trustee in a case under title 11 of the United States Code, or assignees, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.

**(4) Returns of estates and trusts.**—Returns of an estate, a trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States Code shall be made by the fiduciary thereof.

to be within this Court's jurisdiction pursuant to *dicta* in *Nordic Village*.

## II. WHETHER THE DEBTORS ARE ENTITLED TO RELIEF UNDER SECTION 11 U.S.C. § 505 BECAUSE THE IRS FAILED TO ABATE THE PENALTY PURSUANT TO 26 U.S.C. § 6404(f).

As discussed hereinabove, this Court may not have subject matter jurisdiction to review whether the IRS should mandatorily abate a tax penalty under 26 U.S.C. § 6404(f). However, the *Selman* Court seems to indicate that such mandatory action by the IRS may be reviewed by a United States District Court. This Court need not decide this specific issue, since the Debtors did not receive erroneous advice in writing. The mandatory provisions of Section 6404(f) are not applicable to the facts before the Court.

## III. WHETHER THE DEBTORS HAVE SHOWN THAT THE FAILURE TO PAY THEIR 1987 FEDERAL INCOME TAX WAS DUE TO REASONABLE CAUSE AND NOT WILLFUL NEGLECT.

■ This issue is within this Court's jurisdiction under 11 U.S.C. § 505. The Debtors were assessed penalties pursuant to 26 U.S.C. § 6651(a)(2) for a failure to pay taxes in a timely manner. This Section provides that upon the failure of the taxpayer to comply, a penalty shall be added unless the taxpayer shows that "such failure is due to reasonable cause and not due to willful neglect." This Court has already discussed the evidence presented in some detail. The Debtors may have been experiencing financial difficulty in 1987; however, the Debtors eventually paid the tax and the penalties. The Court can ascertain no undue hardship experienced by the Debtors as a result of the payment of the taxes. Treas.Reg. § 301.6651–1(c)(1) provides the following definition of reasonable cause.

\* \* \*· \* \* \*

A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for the payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161–1(b) of this Chapter) if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditure in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax ... A taxpayer will be considered to have exercised ordinary business· care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

The evidence reflects that the Debtors made a $10,000 charitable contribution in 1987, and received the sum of $20,000 in 1987 from the previous sale of certain real property, which was turned over to the bankruptcy trustee. The Debtors were also entitled to certain. setoffs which reduced the taxes to be paid by the Debtors. The Debtors only provided general testimony that to pay the taxes and penalties (when due) would create "an undue hardship for them." The Debtors relied on *In re Pool & Varga, Inc.*, 60 B.R. 722 (Bankr. E.D.Mich.1986), to support their position that undue hardship had been shown. In *Pool & Varga*, however, the debtor described, at some length and in some detail, the financial catastrophe that the debtor had experienced. The Debtors, however, in this case made certain business and personal decisions which were unfortunate. This Court cannot ignore that the Debtors did receive cash payments or business income in 1987 and did make a $10,000 charitable contribution in the same year.

The IRS also correctly points out that *Pool & Varga* is something of an anomaly. The decision of the Federal District Court in *C.J. Rogers, Inc. v. U.S.*, 91-1 USTC ¶ 50,297, P. 88, 177 (E.D.Mich.1990), noted that the decision failed to follow established precedent. The Court in *C.J. Rogers* stated that reasonable cause for a failure to pay income taxes would differ from the requisite burden to show reasonable cause for a failure to pay withholding taxes for individual employees. The *C.J. Rogers'* Court declined to adopt a broad reading that economic difficulties would somehow constitute reasonable cause. *See also Wolfe v. U.S.*, 612 F.Supp. 605, 609 (D.C.Mont.1985) (stating that "[n]either economic difficulties nor the employee illness constitutes reasonable cause for failure to file returns or pay taxes"). The Debtors did not meet their burden of proof in this case.

The Debtors may actually have received a benefit concerning the abatement of one-half of the tax penalty. The recent decision of *In re Sanford*, 979 F.2d 1511 (11th Cir.1992), states that no provision of the Internal Revenue Code or the Treasury Regulations allows a partial waiver of a Section 6551(a)(2) penalty for a single tax year. The taxpayer must meet his/her burden of proof or the penalty is fully enforceable. *Id.* at 1513. Based upon *Sanford,* the IRS did not have to abate any of the tax penalty, and the Debtors would be fully responsible for the entire penalty. Therefore, to a certain extent the Debtors have received a benefit that they might not have been entitled to in light of *Sanford.*[11]

## IV. WHETHER THE PENALTY IS NONDISCHARGEABLE UNDER SECTION 523(a)(7).

Section 523 of the Bankruptcy Code lists those debts which may be deemed nondischargeable in the Debtors' Chapter 7 pro-

ceedings. A fine, penalty or forfeiture must *not* be compensation for actual pecuniary loss. Within this broad classification of penalties, however, the Section further dictates that the penalty *not* relate to a tax that is dischargeable, *or* that the penalty *not* relate to a transaction or event that occurred "before 3 years before" the filing of the bankruptcy petition. A penalty that meets the aforesaid requirements is nondischargeable. The recent decision of *McKay v. United States*, 957 F.2d 689, 693 (9th Cir.1992), describes the analysis as follows:

Carefully parsed, the section initially makes nondischargeable a "debt that is for a fine, penalty or forfeiture payable to and for the benefit of a government unit." Withdrawn from the class, however, are any such fines, penalties, or forfeitures that are "compensation for actual pecuniary loss." These are dischargeable. The double negative, "does not discharge" and "not compensation for actual pecuniary loss," accomplishes this end.

Another group of penalties are withdrawn from the nondischargeable group. These appear in parts (A) and (B) of § 523(a)(7). Part (A) withdraws tax penalties attributable to taxes which are not nondischargeable. That is, part (A) makes dischargeable tax penalties attributable to dischargeable taxes.

\* \* \* \* \* \*

The other group of penalties withdrawn from the nondischargeable group is described in part (B). It is quite straightforward. It makes dischargeable any tax penalty "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable.

---

11. *Sanford,* at one point, states that no provision of the Internal Revenue Code or the Treasury Regulations permits a partial reduction of the tax penalty. This is apparently true, although the language utilized in *Sanford* may be somewhat broad. The penalty is reduced in its entirety, if the taxpayer meets his/her burden of proof under 26 U.S.C. § 6651(a)(2). Then if

the IRS provides erroneous advice in writing concerning the penalty, a separate issue is raised as to whether a portion or all of the penalty may be reduced pursuant to the IRS' abatement authority under 26 U.S.C. § 6404(f). Of course, the *Sanford* Court did not consider the IRS' abatement authority in its decision.

This Court was specifically concerned with whether the penalty assessed against the Debtors was compensation for actual pecuniary loss. This issue turned out to be somewhat difficult to research. Counsel for the IRS could only locate one decision that discussed the issue at all. This Court could do no better. However, the decision is under the Bankruptcy Act (the old Chandler Act), the predecessor to the Bankruptcy Reform Act of 1978, and is from 1958. The Court, in *C.J. Dick Towing Co.*, 161 F.Supp. 751 (S.D.Tex.1958), was required under the Bankruptcy Act to determine whether certain claims would be allowed.[12] A penalty could not be allowed unless it was for an actual pecuniary loss. 11 U.S.C.A. § 93(j), Bankr.Act § 57(j).[13] In its proof of claim, the IRS did not state that it had sustained any pecuniary loss. The Referee in Bankruptcy made no specific finding on the issue, and none was requested by the IRS. Based upon the foregoing, the Federal District Court determined that the claim was not "provable" in bankruptcy.

 By negative implication, the IRS argues that since the claim was not allowed, it was *not* for an actual pecuniary loss. Although this Court would have preferred more persuasive statutory authority or case law on the issue, there is nothing in the record which would indicate that the Debtors' penalty is tied to, associated with or equivalent to any kind of actual pecuniary loss. Rather, the penalty appears to have been assessed to deter certain behavior; that is, not paying one's federal income taxes in a timely manner.

Since the penalty is associated with federal income taxes which are nondischargeable under Section 523(a)(1), the penalty is

also nondischargeable under Section 523(a)(7).

Based upon the foregoing,

**IT IS ORDERED** that the remaining portion of the tax penalty, which was not abated by the IRS, shall be deemed nondischargeable under § 523(a)(7).

**IT IS FURTHER ORDERED** that the Debtors have shown no basis under 11 U.S.C. § 505 and 26 U.S.C. § 6651(a)(2) to alter the amount of the penalty assessed.

**IT IS FURTHER ORDERED** that to the extent the Debtors have further requested this Court to determine whether the IRS appropriately exercised its discretion in abating only one-half of the tax penalty, that relief shall be denied, because of this Court's lack of subject matter jurisdiction over the matter.

---

**12.** This is no longer necessary under the Bankruptcy Code. *See* 11 U.S.C. §§ 501, 502(a), (b), (c), (i) and 724(a) and (b).

**13.** *Collier Bankruptcy Manual*, § 57(j), and A–101 (2 ed. 1954) provide as follows:

(j) Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of

which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law. (k) Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed.