**EAST WIND INDUSTRIES, INC.
and Delaware East Wind,
Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A. 97–2615 (MLC).**

United States District Court,
D. New Jersey.

Jan. 15, 1999.

**340**

Gretchen S. Kolb, Mann Law Associates, P.C., Cherry Hill, NJ, for Plaintiffs.

Paul Blaine, Assistant United States Attorney, United States Attorney's Office, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on cross-motions for summary judgment by plaintiffs East Wind Industries, Inc. and Delaware East Wind, Inc., and defendant the United States of America. For the reasons articulated below, defendant's motion is granted and plaintiffs' cross-motion is dismissed as moot.

### BACKGROUND

Plaintiffs East Wind Industries, Inc. ("East Wind") and Delaware East Wind, Inc. ("Delaware East Wind") bring this action to recover tax penalties paid by both companies for their failure to pay certain federal employment taxes and make payroll deposits in accordance with their obligations under the Internal Revenue Code. The delinquencies commenced in 1982 and continued intermittently through 1988. As we understand it, plaintiffs failed to remit their employees' share of federal social security taxes withheld by plaintiffs, as well as the employers' share of federal unemployment taxes (hereinafter collectively referred to as "employment taxes"), and failed to deposit the monies withheld from their employees in a government depository.[1] The basis for plaintiffs' lawsuit is that 28 U.S.C. §§ 6651 and 6656 waive penalties for the failure to pay employment taxes if the failure to do so is due to "reasonable cause and not due to willful neglect." Id. §§ 6651(a)(2), 6656.

---

1. Both parties repeatedly (and interchangeably) refer to "withholding taxes," "employment taxes" and "payroll taxes" without setting forth exactly the nature of the unpaid taxes owed by plaintiffs. (See, e.g. Am. Compl. ¶¶ 10, 11); "Pls.' Mem. of Law in Supp. of Pls.' Mot. for Summ. J." ("Pls.' Br. in Supp.") at 2; "Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J." ("Def.'s Br. in Supp.") at 1. However, plaintiffs recognize that the unpaid taxes represent both trust fund and non-trust fund taxes. ("Pls.'

Mem. in Supp. of Its Resp. and Objection to Def.'s Supp. Mem. and Reply to Def.'s Resp. to Mot. for Summ. J." ("Pls.' Reply Br.") at 9.) It is apparent from tax forms referred to that the delinquent amounts included both the employees' share of social security taxes (Form 941) and the employers' share of unemployment taxes (Form 940). We proceed to analyze the issues herein based upon this understanding of the nature of the tax delinquencies from 1982 through 1988.

The basic background facts do not appear to be in dispute. (*See* Stmt. of Mat. Facts in Supp. of Pls.' Mot. for Summ. J. ("Mat. Facts") at 1 (noting that plaintiffs and defendant have stipulated to the relevant background facts).) Plaintiffs are both incorporated under the laws of Delaware. Plaintiff East Wind manufactured military clothing and goods for sale to the United States Department of Defense. From 1982 through 1986, Delaware East Wind was a holding company that owned East Wind's manufacturing plant. East Wind paid rent to Delaware East Wind for the use of the building. In 1986, plaintiff East Wind ceased operations, and plaintiff Delaware East Wind began to bid for government contracts. (*Id.*)

Goods manufactured by plaintiffs were purchased by the United States Government through its Defense Personnel Support Center, and the contracts were administered by the Defense Contract Administration Services. Both agencies are branches of the Defense Logistics Agency. (*Id.*; D'Antonio Dep. at 22.) The Court will refer to these agencies as the "Defense Agencies," as it appears that the parties have adopted that designation.

Beginning in 1976, certain employees of the Defense Agencies began soliciting bribes from plaintiffs. (Stmt. of Facts ¶ 7; D'Antonio Dep. at 34–35.) Plaintiffs contend that when they did not submit to the defense employees' demands, they began having business difficulties. Specifically, plaintiffs claim that they had problems obtaining new contracts from the Defense Agencies. Also, with respect to ongoing contracts, plaintiffs allege that payments by the Defense Agencies were delayed, goods were rejected, and certain orders were found to not comply with specifications. (D'Antonio Dep. at 19–21, 35; Stmt. of Mat. Facts ¶ 7.) However, it is undisputed that during the time in question, the Defense Agencies made some contract payments, and plaintiffs were awarded additional contracts by the Defense Agencies. (D'Antonio Dep. at 18, 21, 26.) In addition, plaintiffs'

principal officer, Mario D'Antonio, admitted at his deposition that he paid his employees during the relevant time period.

During the same time period that plaintiffs were experiencing financial difficulties which they allege stemmed from the illegal actions of certain government employees, plaintiffs failed to withhold and pay certain employment taxes. In addition, in or around 1984, both companies filed Chapter 11 Petitions with the United States Bankruptcy Court for the District of New Jersey. Also during this period, Mario D'Antonio was approached by the Federal Bureau of Investigation ("FBI"), and was asked to cooperate in an investigation of the corrupt employees of the Defense Agencies. D'Antonio went undercover in order to gather information on the Defense Agencies in 1985, and worked with the FBI for a period of two years. (D'Antonio Dep. at 30–44.)

Plaintiffs eventually filed claims against the Defense Agencies for over $5,100,000 in damages. (Stmt. of Mat. Facts ¶ 8.) The parties entered into a global settlement which resulted in plaintiffs receiving a total of $2,100,000 from the government ($1,300,000 to East Wind and $800,000 to Delaware East Wind). (*Id.* at ¶ 9–10.) The settlement was administered through the Bankruptcy Court; as a result, plaintiffs paid all of the taxes owed, in addition to some interest and penalties assessed by the IRS.[2] The instant suit for a refund of the interest and penalties paid followed.

Plaintiffs argue that they had reasonable cause for failing to pay the amount of taxes owed to the IRS. Plaintiffs claim that the government employees' corrupt practices left them without recourse because if they paid the taxes owed, the companies would have lost crucial employees and the opportunity to remain a going concern. Plaintiffs state in their Amended Complaint that if the Defense Agencies "had made payments in a timely fashion, and if plaintiffs' claims had been presented properly, then plaintiffs would

---

2. The parties note that there is some disagreement as to the exact amount of penalties paid by the plaintiff. (*See* Pls.' Br. in Supp. at 2 n. 2; Def.'s Br. in Supp. at 3 n. 3.) However, we need not determine the exact amount for the purposes of this motion, as it is clear that plaintiffs' proofs do not demonstrate that the failure to remit said employment taxes is due to reasonable cause. *See infra.*

have paid payroll and employment taxes as and when they became due, and no interest or penalties would have accrued." (Am. Compl.¶ 10.) Plaintiffs argue that, in a situation where the result of payment of the payroll taxes is financial ruin, the taxpayer has a "reasonable cause" for late payment, and interest and penalties should not be imposed upon the delinquent taxpayer. (*Id.*) In support of their argument in that regard, plaintiffs rely upon a series of cases which found reasonable cause in similar factual scenarios. *See In re Arthur's Industrial Maintenance, Inc.*, 1992 WL 132563, at *8 (Bankr.W.D.Va. 1992) ("[A] taxpayer's financial difficulties may, in appropriate circumstances, constitute reasonable cause."); *In re Pool & Varga, Inc.*, 60 B.R. 722 (Bankr.E.D.Mich.1986) ("Neither the statute nor the regulations exclude the possibility that the taxpayer's financial difficulties may constitute reasonable cause. Instead, a fair reading of the regulations leads to just the opposite conclusion."); *Glenwal–Schmidt v. United States*, No. 77–0902, 1978 WL 4527, at *2 (D.D.C. July 12, 1978) (taxpayer argued that failure to remit trust fund taxes was due to reasonable cause where taxpayer was involved in contract with United States Navy and Navy defaulted on certain payments; court found in favor of taxpayer, holding that taxpayer could not have foreseen that Navy would not comply with the requirements of the contract).

In contrast, defendant argues that plaintiffs cannot, as a matter of law, establish reasonable cause for their failure to pay the withholding taxes to the IRS under the circumstances presented in this case. Defendant cites an alternative line of cases which have taken the opposite approach on the issue, namely that the fact that the taxpayer faces financial ruin if such employment taxes are paid does not, under any circumstances, establish reasonable cause for noncompliance with the tax code.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court noted that Rule 56(c) asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Summary judgment is appropriate where there is no genuine issue of material fact in the case which requires a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Our task is to determine the outer boundaries of reasonable cause. Only if plaintiffs' justification could be accepted under the law as reasonable cause would there exist a genuine issue of material fact for a fact-finder to decide whether reasonable cause actually existed. *See United States v. Boyle*, 469 U.S. 241, 249 n. 8, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) ("Whether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements constitute 'reasonable cause' is a question of law.").

"The term 'reasonable cause' is not defined in the tax code, but the relevant Treasury Regulation requires the taxpayer to demonstrate that he or she exercised 'ordinary business care and prudence, but nevertheless was unable to file the return within the prescribed time.' " [3] *Id.* at 246, 105 S.Ct.

---

**3.** Although not an exhaustive list, certain specific reasons for the late filing of a return will be accepted as reasonable cause under the Treasury Regulations. *See Roberts v. Commissioner of IRS*, 860 F.2d 1235, 1241 (5th Cir.1988) (citing Internal Revenue Manual (CCH) § 4562.2). These circumstances include unavoidable postal delays, the taxpayer's timely filing of his return with the wrong IRS office, the death or serious illness of the taxpayer or a member of the taxpay-

er's family, unavoidable absence of the taxpayer, the destruction by casualty of the taxpayer's records, residence, or place of business, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the IRS's failure to furnish the taxpayer with the necessary forms in a timely fashion, the taxpayer's inability to obtain necessary documents, and the taxpayer's reasonable reliance on a tax advisor's advice that no return should be filed.

687 (quoting 26 C.F.R. § 301.6651(c)(1)). A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that it exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid on the due date. 26 C.F.R. § 301.6651–1(c)(1). "Undue hardship" in this context means more than mere inconvenience; the taxpayer must suffer a substantial financial loss if the taxes are paid on the due date. 26 C.F.R. § 1.6161–1(b). Thus, in order to establish "reasonable cause" under the applicable Treasury Regulations, plaintiffs must demonstrate that they exercised ordinary business care and prudence, and that payment of the taxes would impose an undue hardship.

■ The failure to remit trust fund money imposes a more stringent standard according to the Treasury Regulations. Treasury Reg. § 301–6651–1(c)(2) provides, in pertinent part:

[C]onsideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayers' efforts to conserve assets in marketable form may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person.

*Id.* Accordingly, the test for "reasonable cause" is more stringent when trust fund taxes are at issue than would be the case if the unpaid taxes were an individual's income taxes.

■ The delinquent taxes at issue in this case included both the employers' (plaintiffs') and employees' share of certain employment taxes. Thus, plaintiffs' tax obligations included trust fund and non-trust fund taxes. *See* note 1, *supra.* Boiled down to its essence, we must determine whether plaintiffs' excuse for nonpayment of these employment taxes justifies their decision to essentially ignore their obligations under the tax code in order to remain a going concern. In this connection, plaintiffs claim that absent their decision to keep the business afloat by paying employees' salaries rather than the employment taxes, the companies would have collapsed and they would not have been able to receive the settlement funds received in the global settlement with the government. They also state that their sound business judgment is further demonstrated because they did not invest funds in speculative or illiquid assets, nor did they incur lavish living expenses during the relevant time period. *See* 26 C.F.R. § 301.6651–1(c)(1). Moreover, plaintiffs maintain that it is undisputed that payment of the taxes would have imposed an undue hardship on plaintiffs because there were insufficient funds to meet both the companies' tax and payroll obligations.

We note that the Third Circuit has not specifically ruled on the question of whether severe financial difficulties could constitute reasonable cause for the nonpayment of employment taxes under any circumstances. The two lower courts in our circuit which have addressed the issue held that the unfortunate circumstance of financial duress alone does not constitute reasonable cause such as to excuse the taxpayer from filing tax returns and paying employment taxes. *See In re Sykes & Sons, Inc.,* 188 B.R. 507, 513 (Bankr.E.D.Pa.1995) (noting that financial problems would establish undue hardship, but that reasonable cause also requires a showing of ordinary business care and prudence; to the extent that cases relied upon by taxpayer suggested otherwise, the court declined to follow them); *see also Keystone Drafting Co. Inc. v. United States,* No. 74–478, 1975 WL 600, at *2–3 (W.D.Pa. May 13, 1975) (creditor of taxpayer was 6 months in arrears in its monthly payments to the taxpayer, making taxpayer unable to generate enough cash flow to meet its tax obligations; court held that "[n]either the failure to deposit withholding taxes nor to make payment thereof for a period of more than a year is justified by the fact that during this period [the creditor] was up to six months in arrears in its payments to plaintiff.").

We hold as a matter of law that plaintiffs' explanation does not establish reasonable cause as that term is defined in the Treasury

Regulations. In this connection, we find the approach taken by the Sixth Circuit in *Brewery* persuasive. *Brewery Inc. v. United States*, 33 F.3d 589, 592 (6th Cir.1994). In *Brewery*, the Sixth Circuit adopted a bright-line rule that "financial difficulties can never constitute reasonable cause to excuse the penalties for nonpayment of withholding taxes by an employer." *Id.* The court explained that it was "no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." *Id.* at 593 (quoting *Collins v. United States*, 848 F.2d 740, 741–42 (6th Cir.1988)). The court was persuaded that the nature of the tax obligations involved in that case, namely employers' and employees' share of social security and medicare taxes, required a more straightforward approach to the issue of reasonable cause. *Id.* ("The district court was correct in finding that since the trust fund taxes are for the exclusive use of the government, the use of trust funds for the payment of other creditors cannot, as a matter of law, constitute reasonable cause. The [taxpayer] must pay its price for its decision, and that price is mandated in the form of penalties assessed [under the tax code].").

The United States Bankruptcy Court for the Eastern District of Pennsylvania in *In re Sykes* followed the Sixth Circuit's decision in *Brewery*. There the bankruptcy court aptly recognized that the "reasonable cause" standard involves two components: (1) the exercise of ordinary business care and prudence, and (2) undue hardship resulting from payment of the tax obligation. The court stated that while financial duress may establish the "undue hardship" prong of the reasonable cause standard, it does not obviate the need to establish the exercise of ordinary business care and prudence. There the court reasoned:

> We believe that Congress had something more in mind in imposing an ordinary care requirement in addition to the undue hardship test. If ordinary care can be satisfied by showing that absent payment of other creditors, the business would have failed, ordinary care and undue hardship are in

effect the same. To the extent that these cases [cited by taxpayer in *Sykes* and plaintiffs here] may be read to hold otherwise, we do not choose to follow them. Rather, we accept the IRS's position that financial duress alone does not constitute reasonable cause such as to excuse the taxpayer from timely filing, deposit and payment of trust refund taxes.

*In re Sykes*, 188 B.R. at 513. We too find that in this case, plaintiffs' decision to forgo payment of their IRS obligations in the face of the Defense Agency employees' fraudulent conduct cannot be reconciled with the "ordinary business care and prudence" requirement imposed by the Treasury Regulations. Put simply, we do not find plaintiffs' unilateral decision to "self-execute a government loan," *see Brewery*, 33 F.3d at 593, to be an example of acceptable business practice. Of course, because plaintiffs have not demonstrated that they exercised ordinary business care and prudence, they cannot establish reasonable cause for their failure to pay the employment taxes at issue in this case. *See id.; In re Sykes*, 188 B.R. at 513–14.

Plaintiffs take the position that district courts should evaluate each case on its facts in determining whether a taxpayer has demonstrated reasonable cause even where the justification advanced for nonpayment of the tax liability is that the taxpayer was experiencing severe financial difficulties. They argue that this case is the paradoxical example of an instance where the taxpayer has exercised ordinary business care in the face of financial ruin because the financial duress was imposed upon plaintiffs through no fault of their own. In rejecting plaintiffs' position in this regard, we recognize that there is case law which has adopted plaintiffs' position. However, we find those cases unpersuasive for three reasons. First, we note that several courts have disagreed with the holdings in those cases. *See Brewery Inc. v. United States*, No. 92–212, 1993 WL 367567, at *2 (S.D. Ohio June 21, 1993) (rejecting *Glenwal–Schmidt* and *Pool & Varga* and adopting reasoning of *C.J. Rogers Inc.*), *aff'd*, 33 F.3d 589 (6th Cir.1994); *C.J. Rogers, Inc. v. United States*, No.89–70209, 1990 WL 255586, at *1 (E.D.Mich. Sept.17, 1990) (not-

ing that *Glenwal–Schmidt* and *Pool & Varga* had not been cited in a published opinion by any other court at that time, and that those opinions are anomalous and contrary to the weight of authority); *see also Bostar Foods Inc. v. United States,* No. 95–811, 1997 WL 192134, at *2 (W.D.Ky. Feb. 10, 1997) (citing and relying upon *Rogers* ); *In re Upton Printing Co.* 186 B.R. 904, 907 (Bankr. E.D.La.1995) (same); *In re Hallock,* 154 B.R. 297, 303 (Bankr.D.Ariz.1993) (same).

We similarly find that those cases cited and relied upon by plaintiff represent the minority approach. The majority of cases addressing this issue appear to hold the opposite: namely, that financial hardship does not establish reasonable cause for nonpayment of employment taxes. *See, e.g., Brewery,* 33 F.3d at 591–93; *Van Camp & Bennion, P.S. v. United States,* No. 94–409, 1996 WL 529225, at *6–7 (E.D.Wash. July 17, 1996) (noting that it was clear that principal of taxpayer endured much financial and personal hardship but that said circumstances do not warrant abatement of penalties); *Wolfe v. United States,* 612 F.Supp. 605, 608 (D.Mont.1985), *aff'd,* 798 F.2d 1241 (9th Cir. 1986); *In re McTyre Trucking Inc.,* 223 B.R. 588, 593 (Bankr.M.D.Fla.1998) (following *Brewery* ); *In re Sykes,* 188 B.R. at 510; *C.J. Rogers Inc.,* 1990 WL 255586, at *2; *Hallock,* 154 B.R. at 303.

■ We have also rejected plaintiffs' arguments because it is clear that their position is inconsistent with the Treasury Regulations and the purpose of imposing penalties, which is to ensure prompt payment of taxes. *See Boyle,* 469 U.S. at 249, 105 S.Ct. 687 ("The [taxpayer's] duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of circumstances."); *see also id.* at 249, 105 S.Ct. 687 (noting that "prompt payment of taxes is imperative to the Government"); 26 C.F.R. § 301.6651–1(c)(2). "The purpose of penalty taxes [is] to deter this type of improper and flagrant use of trust fund deposits." *In re McTyre Trucking Co.,* 223 B.R. at 593; *see also In re Woodstein–Lauderdale, Inc.,* No. 92–25603, 1994 WL 560974, at *2 (S.D.Fla. July 20, 1994) (noting that absent stringent measures to protect trust fund taxes, monies might easily be used instead to finance a business which is in hazardous or failing condition). Moreover, the cases cited by plaintiff fail to take into account the nature of the unpaid taxes at issue and the importance that the Code places on the payment of employment taxes such as those owed in this case. *See Brewery,* 33 F.3d at 592–93 (discussing importance of trust fund and non-trust fund employment taxes).

■ Finally, we note that the only federal appeals court to have addressed this issue has squarely held that "financial difficulties can never constitute reasonable cause to excuse the penalties for nonpayment of withholding taxes by an employer." *Brewery,* 33 F.3d at 592. While we note that at least one federal district court has expressed its disagreement with the Sixth Circuit's bright line rule in this regard, we find that decision unpersuasive.[4] Moreover, we do not

---

4. The court in *Fran Corp. v. United States,* 998 F.Supp. 296 (S.D.N.Y.1998) reasoned that a bright line rule which establishes as a matter of law that financial difficulties can never constitute reasonable cause is inconsistent with the Treasury Regulation's admonition to consider "facts and circumstances of the taxpayer's situation, including the amount and nature of expenditures in light of income received prior to the date payment was due." 998 F.Supp. at 298–300 (citing 26 C.F.R. § 301.6651–1(c)(1)). The court further noted that the Treasury Regulations also provide that a taxpayer exercises ordinary business care and prudence "if he ma[kes] reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due." *Id.* The court

reasoned that the *Brewery* court's approach foreclosed the district court in each case to make the required assessment, but went on to hold that in the case before it, reasonable cause was not established. *Id.* at 300.

While we recognize that a bright-line rule such as that adopted by the Sixth Circuit precludes a case-by-case inquiry into the specific financial situation of the debtor at the relevant time, our ruling does not render that Treasury Regulation a nullity; rather, our ruling only applies where the justification advanced is that financial duress or difficulty precluded payment of the employment taxes due to the IRS. In other words, where the taxpayer has provided another justification for the nonpayment of tax liability, consideration of the facts and circumstances of the taxpayer's

agree with plaintiffs' contention that we should consider the fact that their financial difficulties were caused (at least in part) by misconduct of federal government employees; nor do we think it appropriate to create an exception to the bright-line rule we adopt today premised solely upon that fact (assuming the validity of plaintiffs' contention in that regard).[5] In our opinion, the fact that non-payment of the employment taxes was the result of financial hardship occasioned by the fraudulent conduct of certain governmental employees is of no consequence. In short, we agree with the following observation in *Rogers:* "accepting plaintiffs' argument would gut the withholding tax system

as it currently exists." *Rogers,* 1990 WL 255586, at *1; *see also Wolfe,* 612 F.Supp. 605, 608 (D.Mont.1985) ("Almost every non-willful failure to pay taxes is the result of financial difficulties. But to allow businesses to postpone filing returns and paying taxes until economic conditions improve would severely restrict the [IRS's] ability to raise revenue for the operation of the federal government."). Accordingly, we find as a matter of law that plaintiffs' justification for failing to pay the employment taxes at issue in this case is insufficient to establish reasonable cause under 26 U.S.C. § 6651(a) and 6656(a).[6]

---

financial situation may be undertaken in determining the reasonableness of the excuse provided. In our view, our ruling today strikes the appropriate balance between that portion of 26 C.F.R. § 6651–1(c)(1) cited above, and 26 C.F.R. § 6651–1(c)(2) which requires the Court to consider the nature of the tax which the taxpayer has failed to pay. Here, the unpaid taxes include both trust fund taxes and non-trust fund taxes. The importance of payment of trust fund taxes cannot be disputed; those monies are supposed to be held in trust for the benefit of the government. *See United States v. Energy Resources,* 495 U.S. 545, 546–547, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). In addition, as the court in *Brewery* noted, non-trust fund taxes such as the employer's share of FICA and medicare taxes are of equal importance, as such non-trust fund tax liability is an obligation of the employer on behalf of the employee. *See Brewery,* 33 F.3d at 593. There the court found those non-trust fund taxes more analogous to trust fund taxes than individual income taxes. We similarly conclude that unpaid unemployment taxes, while classified as non-trust fund taxes, are more akin to trust fund taxes than individual income taxes. *See Ibarra v. Texas Employment Comm'n,* 823 F.2d 873, 874 (5th Cir.1987) (noting that FUTA imposes an excise tax on total wages paid by employers); *Bowman v. Stumbo,* 735 F.2d 192, 193 (6th Cir.1984) (same); *see also* 26 U.S.C. § 3301. Accordingly, 26 C.F.R. § 301.6651–1(c)(2) counsels that the same reasoning applies to the nonpayment of non-trust fund taxes in this case: financial difficulties can never constitute reasonable cause for the failure to remit required tax payments to the IRS. *Id.* at 593–94.

5. We note that one bankruptcy court in the Eastern District of Michigan followed the rule in *Brewery* but also recognized the possibility of an "equity or estoppel based exception to the rule when the government … is the cause of the financial difficulty" which precluded payment of the employment taxes. *In re Gordon Sel–Way, Inc.,* No. 88–04525, 1995 WL 579727, at *6

(Bankr.E.D.Mich. July 24, 1995). In that case, debtor claimed that certain actions of the Environmental Protection Agency directly caused plaintiff to incur substantial losses on the construction project at issue, which in turn caused debtor's financial inability to pay federal employment taxes.

We decline to adopt such an exception to the general rule espoused in *Brewery* and its progeny. First, the contracts at issue in this case were entered into by the Defense Agencies; the government was acting in its capacity as a market participant in those transactions. In that circumstance, we see no reason to impute the intentional wrongdoing of certain employees of the Defense Agencies upon the IRS, which is a separate governmental agency acting in a wholly different capacity in collecting payroll taxes from employers. Moreover, the bankruptcy court in *In re Gordon Sel–Way* cited no authority in support of its adoption of an estoppel argument in this context, and did not choose to apply the exception in the case before it. Finally, we have not found any cases adopting the bankruptcy court's exception in that regard.

6. Assuming *arguendo* that we agreed with the approach taken in the cases relied upon by the plaintiff such that we did consider the facts and circumstances surrounding the non-payment of the employment taxes which occurred in this case, the same result would obtain. Plaintiffs assert that defense officials had been soliciting bribes from D'Antonio since 1976, a time long before the financial difficulties which occurred in this case. (Pls.' Br. in Supp. at 33; *see also* D'Antonio Dep. at 34–35.) Plaintiffs state in their brief that at first, the officials only requested minor favors, and that the bribery scheme was nothing more than a minor annoyance. However, as time progressed, the employees' demands became greater, and plaintiffs were unable to accede to their demands, causing the companies to lose money and contracts with the Defense Agencies. (Pls.' Br. in Supp. at 33.)

**347**

An appropriate Order accompanies this Memorandum Opinion.

Given the long history of problems that plaintiffs experienced with the government officials involved in the bribery scheme, plaintiffs cannot argue that the government employees' actions were unexpected. *Cf. Glenwal–Schmidt*, 1978 WL 4527, at *4 ("[Plaintiff] could not have foreseen that the Navy would not comply with the requirements of the Disputes clause and of the Armed Services Procurement Regulations."). Moreover, plaintiffs' delinquencies together spanned a period of 6 years, which is a significant amount of time. *Cf. Pool & Varga*, 60 B.R. at 725 (delinquencies occurred within 2 year time period). Finally, even giving plaintiffs the benefit of the doubt as to the truth of their assertions concerning the nature and severity of the demands imposed by the government officials (despite the fact that their contentions were propounded in a brief rather than a sworn certification or other admissible evidence), it is clear that plaintiffs are not without fault. We conclude as a matter of law that plaintiffs' course of conduct in acceding to the officials' demands in the beginning, only to choose the alternative when the demands became unrealistic, establishes that plaintiffs did not use ordinary business care and prudence during the relevant time period. Thus, any wrongdoing by the government officials does not excuse plaintiffs' actions. *Cf. Pool & Varga*, 60 B.R. at 725 (debtor's financial difficulties stemmed from recession and loss of 2 large customers).